```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DENNIS FARRELL,                      :

                    Petitioner,      :    07 Civ. 8073 (LAP)(HBP)

     -against-                       :    REPORT AND
                                          RECOMMENDATION
ROBERT ERCOLE,                       :
Superintendent,
                                     :

                    Respondent.      :
----------------------------------X
```

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LORETTA A. PRESKA, United States

District Judge,


I.   Introduction


          Petitioner Dennis Farrell seeks, by his pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating a judgment of conviction imposed on April 8, 2003

after a jury trial, by the Supreme Court of the State of New

York, New York County (Cropper, J. at suppression hearing and

Goodman, J. at jury trial and sentence), for four counts of

robbery in the first degree, three counts of assault in the first

degree, one count of criminal possession of a weapon in the

second degree, one count of criminal possession of a weapon in

the third degree, and one count of reckless endangerment, in
violation of New York Penal Law Sections 160.15(4), 120.10(3),
265.03(2), 265.02(4), and 120.25 respectively (Amended Petition
for a Writ of Habeas Corpus, dated Oct. 14, 2008 (Docket Item
10)("Amend. Petition") at 1).  Pursuant to that judgment, peti-
tioner was sentenced, as a persistent violent felony offender, to
an indeterminate term of imprisonment of one-hundred-and-twenty-
five years to life in prison.  The petitioner is currently
incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recom-
mend that the petition be denied.

II.  <u>Facts</u>

    A.  Facts Giving Rise to
        <u>Petitioner's Conviction</u>

Petitioner's conviction arises from several armed
robberies committed during the months of November and December,
2001, a high-speed vehicular chase and a major motor vehicle
accident that severely injured three people.  The evidence
offered at trial established the following facts.

On November 10, 2001 at approximately 9:00 p.m.,
petitioner and a female accomplice robbed Farid Virani, the
manager of the Tobacco Shack, a convenience store located near

80th Street and 1st Avenue in Manhattan (Tr.[1] 2d 207-12).   The accomplice first entered the store and browsed the magazine section (Tr. 2d 209); fifteen minutes later, petitioner, wearing a mask, entered the store, pointed a gun at Virani's head, told him to go to the back of the store and kicked him in the head (Tr. 2d 209-10).   Petitioner and his accomplice stole between 250 and 300 dollars, lottery tickets and several packs of cigarettes (Tr. 2d 212).

On November 16, 2001 just before 7:00 p.m., petitioner and a female accomplice robbed Sridhar Rao, the manager of Sebastian's grocery, located in the vicinity of 91st Street and Lexington Avenue in Manhattan (Tr. 2d 368-74).   Again, the accomplice entered the store first and browsed the magazines

---

[1] "Tr." refers to the trial transcript; "H." refers to the transcript from the suppression hearing; "S." refers to the transcript from the sentencing proceeding.   Because the pagination of each of these portions of the record is not completely sequential, I have referenced the transcript pages using the following convention.   The portion of the suppression hearing transcript dated October 16, 2002 is referred to as "H."; the portion of the suppression hearing transcript dated October 18, 2002 is referred to as "H. 2d"; the portions of the trial transcript dated January 13, 14, and 15, 2003, are referred to as "Tr."; the portions of the trial transcript dated January 17 and 21, 2003, are referred to as "Tr. 2d"; the portions of the trial transcript dated January 22 and 24, 2003, are referred to as "Tr. 3d"; the portion of the sentencing proceeding transcript dated April 8, 2003, is referred to as "S."; the portion of the sentencing proceeding transcript dated June 3, 2003, is referred to as "S. 2d."

section (Tr. 2d 370); several minutes later, petitioner entered the store, pointed a gun at Rao's chest, and led him to the restroom where the accomplice handcuffed Rao to the door (Tr. 2d 370).  The perpetrators left after two minutes with the cash register and lottery tickets (Tr. 2d 373).

On November 23, 2001 at 4:20 a.m., petitioner robbed Ataul Gani, a clerk at Mike's convenience store, located in the vicinity of 75th Street and 1st Avenue in Manhattan, at gunpoint (Tr. 2d 256-66).  Gani was sitting in a chair when petitioner entered the store, pointed a gun at him, instructed him to enter and remain in the restroom, and told Gani that if he "look[s] back or do[es] something, then [petitioner would] blow [his] head out" (Tr. 2d 256-58).  Petitioner left after ten minutes with the cash register and forty to fifty prepaid phone cards (Tr. 2d 263-64).

On December 6, 2001 at 9:00 p.m., petitioner robbed Manuel Prieto, an attendant at a parking garage located in the vicinity of 64th Street and Lexington Avenue in Manhattan, at gunpoint (Tr. 292-93).  Prieto was working in his office booth when petitioner, again wearing a mask, walked down the entrance ramp, pointed and cocked a gun at Prieto, and said "get on your fucking knees or I'll blow your head off" (Tr. 293).  Prieto got on his knees and petitioner cuffed his hands with plastic hand-

4

cuffs (Tr. 294).  Petitioner stole about 168 dollars, a 2001 silver or grey Nissan Maxima (the "Nissan"), and Prieto's brace-let (Tr. 295-301).  Police officers operating within the 19th Police Precinct were subsequently instructed to be on the lookout for a car matching the Nissan's description and plate number.

At 4:30 a.m. on December 7, 2001, New York City Police Officer Todd Olsen and Lieutenant Timothy D'heedene were driving in an unmarked vehicle when they approached a car, driven by petitioner, which appeared to be the stolen Nissan; Olsen saw a partial plate number which matched the Nissan (Tr. 400-01).  As Olsen tried to get a full view of the plate, petitioner made a left turn against the red light and drove out of view (Tr. 402).  Olsen gave chase as D'heedene reported the sighting and ensuing chase over the radio (Tr. 402-407; Tr. 2d 336-39).  The Nissan was traveling at an excessive rate of speed, the roads that morning were slick, and within a short period of time, the Nissan struck a Lincoln Town Car livery cab in the vicinity of 79th Street and Park Avenue, severely injuring the driver and his two passengers (Tr. 404, 406-07, 416-17).  Petitioner fled from the scene on foot; several police officers who had joined the pursuit gave chase.  The officers found the petitioner under a car parked in front of 110 East 80th Street (Tr. 419-20).  Petitioner had blood on his face and lacerations on his forehead that were

consistent with the impact damage to the Nissan's windshield (Tr. 2d 492).  A pedestrian who witnessed the accident identified petitioner as the driver of the Nissan (Tr. 2d 317-18).  A .38 caliber handgun with an obliterated serial number, a black knit cap, two car keys for other vehicles, two coats, a cell phone, 273 dollars in currency, and several other items were recovered from the Nissan (Tr. 2d 296-308, 431-39).  The handgun was operable and was loaded with five live cartridges (Tr. 449-54).

Petitioner was treated at Bellevue Hospital and was later interviewed at the 19th Precinct (Tr. 3d 23-28).  Petitioner waived his rights and was questioned about a number of robberies (Tr. 3d 30-35).  Although petitioner refused to make a written statement, he did make oral statements that were taken down by the two officers interviewing him (Tr. 3d 36-37).  Petitioner refused to read the statements; the officers read each of the statements aloud, and petitioner orally confirmed their accuracy (Tr. 3d 36-38).  Petitioner and the two officers present signed each statement (Tr. 3d 36-38).  In pertinent part, the statements read as follows:[2]

---

[2] Petitioner was questioned about eleven robberies and made inculpatory statements about eight of them that were memorialized by the police; petitioner denied involvement in only two or three of those incidents (Hr. 2d 17-23).  Petitioner was tried for only four of the robberies and only the statements pertaining to those (continued...)

On Saturday November 10th, '01 Barbara went into store first.  I went behind her.   There was a short Indian guy working there.  I pulled the gun out and pointed it at the guy.  I told him to lay down or kneel down on the floor.  I told him to give me the money.  He told me his boss took all the money.  I took what was there, a few hundred dollars and some lottery tickets.  I had a white van outside that we left in.  That was the Tobacco Shack on First Avenue, East 80th Street to 81st Street on the east side of the Street.

On November 16th, '01 I was with Barbara.  Went into the store on Lexington Avenue between East 91st Street and East 92nd Street.  I pointed a gun at the guy in the the [sic] store.  Barbara brought the guy to the back and handcuffed the guy.  I took the cash register and lottery tickets.  I had this Suzy Watts gun.  We had a cab on hold.  When we ran out of the store he left us.  So I hailed a cab, a yellow cab, I put the register in a black plastic bag, I had a black plastic bag with me when I went into the store I dumped the register on East 99th Street in the garbage bin.

On 11/23/01 at about four o'clock in the morning I was by myself.  I was driving a white rental van that I had rented from Rent Me Van on East 121st Street and First Avenue by the White Castle.  I went into the store on First Avenue between East 75th Street and East 76th Street.  East side of First Avenue more towards East 75th Street.  I just walked into the store, pointed the gun at the guy and said to the back.  I put the guy in the bathroom, I went behind the counter.  I took the whole cash register, cartons of cigarettes and phone cards.  I put everything into a black plastic bag I brought into the store.  I had a black Suzy Watts gun. I had the van parked on the corner of First Avenue and East 76th Street uptown direction on the east side of the Street.

On 12/6/01 at 9:30 PM or 10 PM I took the train from East 116th Street to 59th Street.  I go [sic] off the

---

[2](...continued)
four robberies were admitted into evidence.

train and look for a garage on East 64th Street.  I saw one guy working in this garage.  I walked down the ramp without him noticing me.  When I got to the front of the door I cocked the gun.  I mean I racked the gun. . . .  He said okay, okay take the money.  He gave me the money.  He said I was making him nervous.  I gave him some plastic handcuffs to put on.  I bought the hand-cuffs from Home Depot.  He put them on and I just tighten them.  I put them in back.  He said his partner was downstairs.  I told him to sit down.  I asked him where's the car keys.  He said they were in the cars.  He said take my bracelet too.  So he gave me his brace-let.  It had two charms on it.  I jumped in one of the cars that had keys in it and took off.  I went to a club in Brooklyn called Pazzo.  I left the club at 3:15 AM.  I came back to the city, I was going to stay uptown.  I saw a suspicious car trying to get behind me.  I had gotten off the FDR driving at East 61st Street.  I was driving on First Avenue north.  I then went over to Third Avenue and I was driving uptown when I saw this auto following me.  On East 70th something street -- on East 71st Street I knew it was the police.  I sped away and made a left.  I just kept making turns trying to dump them, the police.  I was doing about 80.  I saw the light change and I skidded into the other car.  I got out and ran to 80th Street and tried to hide under a car.  I was arrested.  The last light I was getting ready to run.  The black handcuffs in the car were mine.

(Tr. 3d 39-45).

The three occupants of the livery cab that petitioner struck were transported to New York Weill Cornell Medical Center immediately after the accident.  The driver, Abdul Asif, suffered a broken cervical spine which required multiple surgeries as well as the fusion of a metal plate into his neck (Tr. 3d 129-31).  One of the passengers, Adelina Martinez, suffered a severely broken arm which required surgery; she is not expected to ever

8

regain the full use of her arm (Tr. 3d 121-33).  The second passenger, Pnina Ashkelon, suffered a subarachnoid hemorrhage of the brain and a broken pelvis.  Ashkelon came into the hospital in a comatose state and has "almost [a] zero percent chance" for recovery (Tr. 3d 133-36).

B.   Trial Court Proceedings

Virani, Gani, and Rao identified petitioner at lineups conducted on December 19, 2001; Prieto identified the bracelet recovered from petitioner as his own (Tr. 306; Tr. 2d 217-18, 267-68, 377-79).

After conducting a suppression hearing, the Trial Court ruled that the signed confessions were freely and voluntarily made by petitioner and that the lineups were conducted in a fair and non-suggestive manner and that testimony concerning the lineups was, therefore, admissible at trial during the prosecution's case-in-chief[3] (Wade/Huntley Decision and Order, dated Oct. 24, 2002 ("Wade/Huntley Decision") at 5-6, annexed to

---

[3] Petitioner made incriminating statements to police officers while at Bellevue Hospital, to wit, he "would like to wrap this all up in a package [deal]" and would "take four years for everything" (Tr. 3d 165-66).  These statements were ruled inadmissable during the prosecution's case-in-chief (Wade/Huntley Decision) but were introduced during petitioner's cross-examination as impeachment evidence (Tr. 3d 165-66).

Petitioner's Reply Memorandum of Law to the Respondent's Answer, dated Mar. 20, 2010 ("Petitioner's Reply") as Exhibit F).

At trial, petitioner testified that he purchased a bracelet and rented the Nissan from a person known only as "Green Eyes" in a social club in Manhattan on the night of December 6, 2001 (Tr. 3d 79-84). He testified that after driving to a club in Brooklyn, he returned to Manhattan (Tr. 3d 84-87). Petitioner stated that he had ingested heroin and alcohol on the evening he was arrested and was driving at 4:30 a.m. when an unmarked car pulled up along side him. The cars occupants -- two men with guns drawn -- instructed petitioner to pull over (Tr. 3d 86-88). Petitioner, believing that the men may be attempting to carjack, rob, or otherwise cause him harm, quickly drove off and tried to outrun the two men (Tr. 3d 89-91). After driving at a high rate of speed for fifteen or twenty blocks, petitioner admitted that he collided with a livery cab, took off on foot, and hid under a car believing the men were following close behind (Tr. 3d 92-93). Petitioner also testified that he was coerced into signing inculpatory statements at the 19th Precinct by two men in plain clothes who punched, hit, and choked him repeatedly and stated that "when you go inside and talk to the detective you're going to sign whatever he tells you to sign and you're going to do whatever he tells you to do. . . . Don't make us have to come

10

back and go through this again" (Tr. 3d 112-15).  During cross-examination, petitioner admitted that he believed the Nissan may have been stolen and admitted to owning all items recovered from the Nissan except the handgun, handcuffs, the black knit cap, and a roll of nickels (Tr. 3d 175-76).

The jury found petitioner guilty of all counts (Tr. 3d 328-30) and he was sentenced, as a persistent violent felony offender, to an indeterminate term of imprisonment of one-hundred-and-twenty-five years to life in prison (S. 2d 2).

### C.   Post-Conviction Proceedings

Petitioner, assisted by counsel, appealed his conviction to the Appellate Division of the Supreme Court, First Department, asserting five claims:  (1) the Trial Court improperly refused to suppress the complainants' identifications that were based on unduly suggestive lineups and his counsel was ineffective for failing (a) to develop the facts fully at the Wade[4] hearing and (b) to move to reopen the Wade hearing; (2) the Trial Court erred when it refused to instruct the jury on duress and justification and his counsel was ineffective for failing to request a justification charge; (3) the Trial Court violated

---

[4] See United States v. Wade, 388 U.S. 218 (1967).

petitioner's right to the free exercise of his religion when it
refused to allow him to observe the Jewish Sabbath; (4) the Trial
Court erred when it instructed prospective jurors on the elements
of robbery prior to opening statements; and (5) his sentence was
(a) excessive and (b) unconstitutionally imposed because facts
which enhanced petitioner's sentence beyond the otherwise appli-
cable statutory maximum were not submitted to the jury and proven
beyond a reasonable doubt (Exhibit A to the Declaration of
Leilani Rodriguez, dated Sept. 22, 2009 (Docket Item 15)
("Rodriguez Decl.") at 19-23, 24-28, 28-33, 33-37, 37-50).

The Appellate Division unanimously affirmed Farrell's
conviction on April 6, 2006, stating:

> The [trial] court properly denied defendant's
> motion to suppress lineup identifications.  The record
> establishes that the height and weight disparities
> between defendant and the other lineup participants
> were sufficiently minimized by having the participants
> seated and their torsos covered (see People v Chipp, 75
> NY2d 327, 336 [1990], cert denied 498 US 833 [1990];
> People v Marquez, 364 AD2d 634, 635 [1999], lv denied
> 94 NY2d 825 [1999]).

> The [trial] court did not violate defendant's
> right to free exercise of religion by denying his
> request for an adjournment on a Friday afternoon so he
> could return to Rikers Island before sundown to observe
> the Jewish Sabbath.  The jury was in the midst of
> deliberations, had just requested a readback of testi-
> mony and indicated it had already reached a verdict on
> several of the charges.  Under these circumstances, the
> court had a legitimate and compelling interest in
> completing the trial without the requested weekend
> adjournment (see People v Hall, 2 AD3d 227, 228 [2003],

<u>lv</u> <u>denied</u> 2 NY3d 741 [2004]; <u>People v Rosemond</u>, 270
AD2d 293 [2000], <u>lv</u> <u>denied</u> 95 NY2d 803 [2000]).  In any
event, defendant made his request for an adjournment at
a time of day when it was no longer possible to deliver
him to Rikers Island prior to the commencement of the
Sabbath.

The [trial] court properly denied defendant's
request for a charge on the defense of duress, since
there was no factual basis for such a charge (<u>see</u> Penal
Law § 40.00).  Defendant's claim that he was entitled
to a justification charge under the emergency doctrine
(Penal Law § 35.05 [2]), and his challenges to the
court's pre-voir dire instructions, are unpreserved and
we decline to review them in the interests of justice.
Were we to review them, we would find them to be with-
out merit.

Defendant received effective assistance under the
state and federal standards (<u>see</u> <u>People v Benevento</u>, 91
NY2d 708, 713-714 [1998]; <u>see</u> <u>also</u> <u>Strickland v Wash-</u>
<u>ington</u>, 466 US 668 [1984]).

Defendant's constitutional challenge to the proce-
dure under which he was sentenced as a persistent
violent felony offender is unpreserved for appellate
review and, in any event, is without merit (<u>see</u> <u>People</u>
<u>v Rosen</u>, 96 NY2d 329 [2001], <u>cert</u> <u>denied</u> 534 US 899
[2001]).  Defendant's mandatory sentence as a persis-
tent violent felony offender was based entirely on his
prior convictions (<u>see</u> <u>Almendarez-Torres v United</u>
<u>States</u>, 523 US 224 [1998]).  We perceive no basis for
reducing the sentence.

<u>People v. Farrell</u>, 28 A.D.3d 244, 244-45, 812 N.Y.S.2d 101, 101-

02 (1st Dep't 2006).

By letters dated April 10 and 21, 2006 petitioner,

again assisted by counsel, sought leave to appeal to the New York

Court of Appeals (Letter to Hon. Judith S. Kaye, dated Apr. 10,

2006; Letter to Hon. Albert M. Rosenblatt, dated Apr. 21, 2006,

annexed as Exhibit D and E, respectively, to the Rodriguez
Decl.).  In these applications, petitioner sought review of all
of the claims he raised before the Appellate Division.  The New
York Court of Appeals denied petitioner's application without
opinion on May 16, 2006.  People v. Farrell, 6 N.Y.3d 894, 850
N.E.2d 676, 817 N.Y.S.2d 629 (2006).

On July 31, 2007, petitioner moved, pro se, to vacate
his judgment of conviction pursuant to New York Criminal Proce-
dure Law § 440.30 (the "440.30 Motion"), arguing that:  (1) he
was not notified of the charges that were going to be submitted
to the grand jury; (2) the grand jury witnesses gave false
testimony; (3) discovery, in the way of police reports, was not
turned over to him for pre-trial hearings; (4) the prosecution
withheld Rosario and Brady material; and (5) his trial counsel
provided ineffective assistance by, inter alia, failing (a) to
obtain all paperwork from petitioner's prior attorney, (b) to
make various arguments at trial, (c) to make objections to trial
instructions, and (d) to object to the sentencing proceedings
(Notice of Motion to Vacate Judgment and Affidavit, dated July
2007, annexed as Exhibit H to the Rodriguez Decl.).

In August, 2007, while his 440.30 Motion was pending,
Petitioner filed a pro se petition for a writ of habeas corpus
(Petition for a Writ of Habeas Corpus, dated Aug. 10, 2007

14

(Docket Item 2)("Petition")).  Petitioner attached a copy of the table of contents from his brief to the Appellate Division of the Supreme Court and asserted all of the claims raised therein (Petition at ¶ 13).

On October 18, 2007, petitioner requested, and was granted, a stay of his Petition pending the resolution of his 440.30 Motion and an anticipated motion seeking a writ of error coram nobis (Notice of Motion and Declaration, served on Oct. 18, 2007 (Docket Item 4); Order, dated Nov. 15, 2007 (Docket Item 5).

On October 18, 2007, the Supreme Court, New York County (Cataldo, J.), denied Petitioner's 440.30 Motion.  The Court held that:

> The arguments advanced in defendant's moving papers were either raised upon his direct appeal or could have been raised on his direct appeal.
>
> Accordingly, this court is barred by the provisions of CPL§ 440.10(2)(a) and (c) from reviewing both the hearing court's and trial court's determinations. In any event, for the reason's [sic] set forth in the People's responding affirmation, I find defendant's arguments to be without merit

(People v. Farrell, Ind. No. 7379-2001 at 2-3 (Sup. Ct. N.Y. Co. Oct. 18, 2007)(Decision and Order denying 440.30 Motion), annexed as Exhibit J to the Rodriguez Decl.).

On November 13, 2007, petitioner applied for leave to appeal the denial of his 440.30 Motion to the Appellate Division

(Notice of Motion for Certificate Granting Leave to Appeal and Affidavit in Support of Motion, dated Nov. 13, 2007, annexed as Exhibit K to the Rodriguez Decl.); that application was denied on January 17, 2008 (People v. Farrell, Ind. No. 7379-2001 (1st Dep't Jan. 17, 2008), annexed as Exhibit M to the Rodriguez Decl.).

On February 22, 2008, petitioner sought, by a pro se motion for a writ of error coram nobis ("Writ of Error"), an order vacating his conviction on the ground that his appellate counsel was ineffective.  Petitioner claimed that his appellate counsel was ineffective for failing (1) to object to the coerced confession, (2) to argue that the proof of depraved indifference to human life -- an element of assault in the first degree -- was legally insufficient and against the weight of the evidence, (3) to argue that without proof that petitioner possessed a deadly weapon, his conviction for robbery in the first degree should be reduced to robbery in the third degree and his conviction for criminal possession of a weapon should be dismissed, and (4) to raise trial counsel's ineffectiveness in failing (i) to investi-gate the procedures the police used to extract confessions from petitioner, (ii) to object to the prosecutor's summation, and (iii) to request an intoxication charge (Notice of Motion for a

16

Writ of Error Coram Nobis, dated Feb. 22, 2008, annexed as Exhibit N to the Rodriguez Decl.).

      The Appellate Division of the Supreme Court for the First Department denied petitioner's motion without opinion on May 15, 2008 (People v. Farrell, Ind. No. 7379-2001 (1st Dep't May 15, 2008)(Order denying motion), annexed as Exhibit P to the Rodriguez Decl.).

      By letters dated June 13 and July 14, 2008 petitioner, proceeding pro se, sought leave to appeal the denial of his motion for a Writ of Error to the New York Court of Appeals (Letter to Hon. Judith S. Kaye, dated June 13, 2008; Letter to Hon. Eugene F. Pigott, dated July 14, 2008, annexed as Exhibit Q, to the Rodriguez Decl.).  Petitioner asserted all of the claims he raised before the Appellate Division on his motion.  The New York Court of Appeals denied petitioner's applications without opinion on May 16, 2006.  People v. Farrell, 11 N.Y.3d 736, 894 N.E.2d 659, 864 N.Y.S.2d 395 (Aug. 15, 2008).

      By a letter dated August 22, 2008, petitioner requested leave to amend his Petition for a writ of habeas corpus; that application was granted on September 2, 2008 (Endorsed Letter to Hon. Henry Pitman, dated Aug. 22, 2008 and Endorsed on Sept. 2, 2008 (Docket Item 9)).

17

On October 16, 2008, petitioner served an amended petition for a writ of habeas corpus.  The amended petitioner raises the same five claims he raised in his initial Petition and raises four new claims.[5]  Specifically, petitioner claims that: (1) the Trial Court violated his right to due process when it improperly refused to suppress the complainants' identifications that were based on unduly suggestive lineups; (2) the Trial Court violated his right to the free exercise of his religion when it refused to allow him to observe the Jewish Sabbath; (3) the Trial Court committed error by instructing prospective jurors on the elements of robbery prior to opening statements; (4) the Trial Court erred when it refused to instruct the jury on (a) duress and (b) justification; (5) the adjudication of petitioner as a persistent violent felony offender was unconstitutional; (6) the prosecution improperly failed to disclose evidence of an alterna- tive perpetrator of one of the robberies to which petitioner allegedly confessed; (7) trial counsel provided ineffective assistance by failing (a) to develop all relevant facts at the Wade hearing, (b) to move to reopen the Wade hearing if the facts were not immediately known to the court, (c) to object to peti-

---

[5] In order to permit a more concise presentation, some of petitioner's claims have been reordered and renumbered or combined under one claim number.

tioner's sentence and to deficient notice of the convictions that
were used to enhance petitioner's sentence, (d) to investigate
the case adequately, and (e) to object to the Trial Court's
refusal to charge the jury on duress and justification; and (8)
petitioner's appellate counsel was ineffective for failing (a) to
object to the coerced confession, (b) to argue that the proof of
depraved indifference to human life was legally insufficient and
against the weight of the evidence, (c) to argue that absent
proof that petitioner possessed a deadly weapon, his conviction
for robbery in the first degree should be reduced to robbery in
the third degree and his conviction for criminal possession of a
weapon should be dismissed, and (d) to raise trial counsel's
ineffectiveness in failing (i) to investigate the procedures the
police used to extract confessions from petitioner, (ii) to
object to the prosecutor's summation, and (iii) to request an
intoxication charge (Amend. Petition at ¶¶ 12-14 and attach-
ments)(the "Renumbered Claims").

III.  <u>Analysis</u>

   A.  <u>Timeliness</u>

      Respondent concedes that petitioner's original petition
was timely.  However, respondent argues that petitioner's amended

19

petition was untimely and that three of the four claims first
asserted in the amended petition do not relate back to the timely
filed claims and are, therefore, time barred.

### 1.  Legal Principles

28 U.S.C. § 2244(d)(1), as amended by Section 101 of
the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), Public Law No. 104-132, created a one-year statute of
limitations for habeas corpus petitions:

> A 1-year period of limitation shall apply to an appli-
> cation for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by
> > the conclusion of direct review or the expiration
> > of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an
> > application created by State action in violation
> > of the Constitution or laws of the United States
> > is removed, if the applicant was prevented from
> > filing by such State action;
> >
> > (C) the date on which the constitutional right
> > asserted was initially recognized by the Supreme
> > Court, if the right has been newly recognized by
> > the Supreme Court and made retroactively applica-
> > ble to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the
> > claim or claims presented could have been discov-
> > ered through the exercise of due diligence.

20

The AEDPA's limitations period ordinarily commences running when a conviction becomes final.  28 U.S.C. § 2244(d)(1)(A).  A conviction becomes final upon the completion of direct appellate review in state court and by the United States Supreme Court, either when certiorari proceedings are completed or when the time for seeking further direct review expires. McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003); Williams v. Artuz, 237 F.3d 147, 150 (2d Cir. 2001).  A party seeking United States Supreme Court review of a state court decision must file his or her petition for a writ of certiorari within ninety days of the decision sought to be reviewed.  Sup. Ct. R. 13(1); Bowles v. Russell, 551 U.S. 205, 212 (2007); Saunders v. Senkowski, 587 F.3d 543, 547 (2d Cir. 2009); Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000); see Day v. McDonough, 547 U.S. 198, 201 (2006).  Thus, petitioner's conviction became final for AEDPA purposes on August 14, 2006 -- ninety days after the New York Court of Appeals denied petitioner leave to appeal his conviction.

Under certain circumstances, the limitations period of the AEDPA can be tolled.  For instance, tolling occurs for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  The

21

tolling period includes the time during which an appeal concern-
ing any post-conviction motion is pending.  See Bennett v. Artuz,
199 F.3d 116, 119-21 (2d Cir. 1999).  However, such applications
"do[] not reset the date from which the one-year statute of
limitations begins to run."  Smith v. McGinnis, 208 F.3d 13, 17
(2d Cir. 2000); accord Bethea v. Girdich, 293 F.3d 577, 578 (2d
Cir. 2002) (per curium); Clark v. Stinson, 214 F.3d 315, 319 (2d
Cir. 2000).

> 2.  Application
>
>> a.  Timeliness of the
>>     Claims Contained in the
>>     Amended Petition

Petitioner's amended petition was "filed"[6] on October
16, 2008, well after a year from the date on which his conviction
became final.  However, petitioner's state court filings tolled
the statute of limitations for at least part of the period after
his conviction became final.

On July 31, 2007, petitioner served his 440.30 Motion,
tolling the limitations period; as of that date, petitioner had
fourteen days remaining on his one-year clock (Exhibit H to

---

[6] The amended petitioner is dated October 16, 2008, and I
deem it to have been filed on that date.  See Hardy v. Conway,
162 F. App'x 61, 62-63 (2d Cir. 2006).

Rodriguez Decl.).  That motion was finally resolved on January
17, 2008 (Exhibit M to Rodriguez Decl.).  Absent further tolling,
petitioner would have had until January 31, 2008 to file his
amended petition in compliance with AEDPA's one-year limitations
period.  Petitioner did not file his motion for a Writ of Error
until February 22, 2008, twenty-two days after the expiration of
the limitations period.[7]  Thus, the new claims in the amended
petition are untimely unless they relate back to the date on
which the original petition was filed.

> b.   Legal Principles
>      Pertaining to Relation-Back

Whether an amendment to a habeas petition relates back
to the date of the original petition is governed by Federal Rule
of Civil Procedure 15(c), which states that an amendment may
relate back to an original pleading when both the pleading and

---

[7] Although petitioner did request, and was granted, a stay
and abeyance of his original petition, see Rhines v. Webber, 544
U.S. 269, 277-78 (2005), that stay operates only to defer
consideration of claims that were timely asserted but not yet
exhausted.  The stay did not operate to stop the clock as to
claims that were not asserted prior to the expiration of the
limitations period.  See Zarvela v. Artuz, 254 F.3d 374, 383 n.5
(2d Cir. 2001) ("The claims presented in that initial petition .
. . are properly before the District Court because that initial
petition should have been stayed.  Whether the new claim
presented in the refiled petition is entitled to be considered to
'relate back' to the timely claims in the initial petition is a
matter for consideration by the District Court.").

amendment arise out of the same "conduct, transaction, or occur-
rence." See Mayle v. Felix, 545 U.S. 644, 648-50 (2005).  The
Supreme Court held in Mayle that an amendment to a habeas corpus
petition may relate back "[s]o long as the original and amended
petitions state claims that are tied to a common core of opera-
tive facts." Mayle v. Felix, supra, 545 U.S. at 664.  A newly
asserted claim "does not relate back . . . when it asserts a new
ground for relief supported by facts that differ in both time and
type from those the original pleading set forth." Mayle v.
Felix, supra, 545 U.S. at 650.  A claim will not relate back
simply because it arises out of the same criminal proceeding.
The "relation-back" requirement, with respect to amended habeas
corpus petitions, "has been narrowly construed." Piper v. Smith,
07 Civ. 9866 (DLC)(RLE), 2009 WL 857602 at *2 (S.D.N.Y. Mar. 20,
2009)(Ellis, M.J.), adopted, 2011 WL 116147 (S.D.N.Y. Jan. 13,
2011)(Cote, D.J.).  "Each separate congeries of facts supporting
the grounds for relief . . . would delineate an 'occurrence.'"
Mayle v. Felix, supra, 545 U.S. at 661.  "In determining whether
the claim arises out of the same conduct or occurrence, the
pertinent inquiry . . . is whether the original [pleading] gave
the defendant fair notice of the newly alleged claims." Veal v.
United States, 01 Civ. 8033 (SCR), 97 Cr. 544 (SCR), 04 Civ. 5122
(MBM), 2007 WL 3146925 at *4, *5 (S.D.N.Y. Oct. 9, 2007)(Robin-

son, D.J.), quoting Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 815 (2d Cir. 2000)(quotations omitted); see, e.g., Perez v. United States, CV-00-3435 (DGT), 2009 WL 1606470 at *4-*5 (E.D.N.Y. June 8, 2009) (claim of ineffective assistance of trial counsel based on conduct prior to verdict did not relate back to claim that trial counsel was ineffective at sentencing); Jenkins v. Graham, 06 Civ. 10200 (CM)(JCF), 2009 WL 1119383 at *3 (S.D.N.Y. Apr. 23, 2009) (Francis, M.J.) (claim of ineffective assistance of appellate counsel based on failure to assert trial counsel was ineffective for failing to argue that indictment was facially deficient did not relate back to claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to preserve claim of retaliatory sentencing); Veal v. United States, supra, 2007 WL 3146925 at *5 (ineffective assistance claim based on new facts did not relate back); Torres v. Girdich, 04 Civ. 1512 (GWG), 2006 WL 1230328 at *8 (S.D.N.Y. May 9, 2006) (Gorenstein, M.J.) (claims of trial counsel's ineffectiveness based on his failure to properly investigate, to object to the introduction of photographs, to object to petitioner's appearance in handcuffs before the jurors, prior to voir dire, and to raise a Brady violation did not relate back to claim that trial court erred in failing to give a limiting instruction when questioning witnesses as to methods of

packaging and marketing narcotics); see also Scott v. Phillips,
05-CV-0142 (CBA), 2007 WL 2746905 at *6 (E.D.N.Y. Sept. 19, 2007)
(claim of ineffective assistance of appellate counsel based on
failure to raise trial counsel's ineffectiveness for failing to
investigate and failing to call an expert witness related back to
claims of ineffective trial counsel based on the same omissions);
Serrano v. Burge, 03 Civ. 8639 (RMB)(RLE), 2005 WL 2063765 at *4
(S.D.N.Y. Aug. 22, 2005) (Ellis, M.J.) (finding relation-back
when "[a]lthough the ineffective assistance claim was based on a
new theory of relief, it [arose] from the same facts as the
original habeas petition"), adopted, 2005 WL 2170362 (S.D.N.Y.
Sept. 8, 2005) (Berman, D.J.).

            c.   Application

        The first six claims in the amended petition (Renum-
bered Claims 1, 2, 3, 4(a), 4(b), 5, 7(a), 7(b), and 7(e)) quali-
fy for relation back.  These claims essentially repeat, and to
some extent, clarify the claims asserted in the initial petition.
"As such, the amended claims relate back to those in the original
petition because they are clearly 'tied to a common core of
operative facts.'"  Porter v. Greiner, CV-00-6047 (SJ/VVP), 2005
WL 3344828 at *8-*10 (E.D.N.Y. Nov. 18, 2005), quoting Mayle v.
Felix, supra, 545 U.S. at 664 n.7.

As for the three remaining newly asserted claims,[8] an individualized assessment of two of the claims and their subparts is necessary to determine whether they relate back to claims asserted in the timely filed original petition.  With respect to the third newly asserted claim, a putative <u>Brady</u> violation (claim 7 in the amended petition, Renumbered Claim 6), it is easier to resolve this claim on the merits (in Part III(C)(6) below) because it is facially deficient and, therefore, can be dismissed without the need for a timeliness analysis.

> i.    Petitioner's Newly Asserted
>       Ineffective-Assistance-of-Trial
>       <u>and Appellate-Counsel Claims</u>

Petitioner's eighth claim in the amended petition (Renumbered Claim 7(d)) asserts, <u>inter</u> <u>alia</u>, that trial counsel was ineffective for failing to investigate [petitioner's] case properly  (Amend. Petition attachment pertaining to Ground Eight at 2-3).

---

[8] These claims assert (i) the prosecution committed a <u>Brady</u> violation, (ii) appellate counsel provided ineffective assistance, and (iii) trial counsel provided ineffective assistance by failing to investigate petitioner's case adequately and for failing to object to petitioner's sentence and to deficient notice of the convictions that were used to enhance petitioner's sentence.

Petitioner's ninth claim in the amended petition
(Renumbered Claim 8) asserts that petitioner's appellate counsel
was ineffective for failing (a) to object to the coerced confes-
sion, (b) to argue that the proof of depraved indifference to
human life was legally insufficient and against the weight of the
evidence, (c) to argue that absent proof that petitioner pos-
sessed a deadly weapon, his conviction for robbery in the first
degree should be reduced to robbery in the third degree and his
conviction for criminal possession of a weapon should be dis-
missed, and (d) to raise trial counsel's ineffectiveness in
failing (i) to investigate the procedures the police used to
extract confessions from petitioner, (ii) to object to the
prosecutor's summation, and (iii) to request an intoxication
charge (Amend. Petition attachment pertaining to Ground Nine at
1-2).

Although petitioner did claim, in his original peti-
tion, that his trial counsel was ineffective for failing to move
to reopen the Wade hearing and for not properly requesting a
justification charge, the newly added claims asserting trial
counsel's failure to investigate and all of the claims regarding
appellate counsel's ineffective assistance are "sufficiently
separate and distinct from those claims originally plead that it
cannot be said to arise out of the same 'transaction, conduct, or

28

occurrence.'"  Valerio v. Phillips, 02-CV-903 (RJA)(VEB), 2007 WL
4191817 at *6 (W.D.N.Y. Nov. 21, 2007), quoting Mayle v. Felix,
supra, 545 U.S. at 656, citing Veal v. United States, supra, 2007
WL 3146925 at *6 and United States v. Craycraft, 167 F.3d 451,
457 (8th Cir. 1999); see also Porter v. Greiner, supra, 2005 WL
3344828 at *10.  In addition, nothing on the face of the claims
contained in the original petition would have given respondent
fair notice of these claims which were added in the amended
petition.  See Veal v. United States, supra, 2007 WL 3146925 at
*5; Porter v. Greiner, supra, 2005 WL 3344828 at *10.  Therefore,
these claims do not relate back to the timely filed claims and
are time barred.

        Petitioner's eighth claim in the amended petition
(Renumbered Claim 7(c)) regarding his trial counsel's ineffec-
tiveness at sentencing arguably does relate back to a claim from
the original petition -- that his sentence was unconstitutional
and excessive.[9]  Without deciding whether these claims actually

---

        [9] Petitioner's original petition attached a copy of his the
table of contents to his brief on direct appeal to the Appellate
Division (See Petition at ¶ 13 (stating "See Attached Table of
Contents from State Court Appellate Brief") and attachment).
Within petitioner's appellate brief, under Point V, "Appellant's
Sentence Is Unconstitutional and Excessive," petitioner argued
that (1) the procedure used to adjudicate petitioner as a
persistent violent felony offender was unconstitutional under
Apprendi v. New Jersey, 530 U.S. 466 (2000) and (2) petitioner's
                                              (continued...)

relate back to the original petition, I shall also resolve them on the merits (see Section III(C)(7)(b)(ii) below).  As discussed below, the claim fails on the merits and there is, therefore, no prejudice to respondent to bypassing the limitation defense.

    B.   Procedural Bar

        1.   Applicable Legal
              Principals

A habeas petitioner's constitutional claim can be procedurally barred if it has not been asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that failure to reject the claim.  As the Court of Appeals for the Second Circuit has explained:

> Under [the independent and adequate state ground] doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, "[t]his rule applies whether the state law ground is substantive or procedural."  Id.
>
>          *     *     *

---

[9](...continued)
sentence was excessive and should be reduced in the interests of justice as the sentencing court was "guided" by "its own anger [and] animosity" and because "a prison sentence of 125 years to life is not the solution" (Exhibit A to Rodriguez Decl. at 37-50).

> The doctrine also applies in the context of fed-
> eral courts reviewing applications for a writ of habeas
> corpus . . . .  [I]nvoking principles of comity and
> federalism . . . federal habeas courts faced with an
> independent and adequate state ground of decision defer
> in the same manner as does the Supreme Court on direct
> review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Beard

v. Kindler, --- U.S. ---, ---, 130 S.Ct. 612, 614 (2009) ("A

federal habeas court will not review a claim rejected by a state

court if the decision of [the state] court rests on a state law

ground that is independent of the federal question and adequate

to support the judgment." (inner quotations omitted)).

As long as the state court relies on a procedural bar

as an independent basis for its decision, a claim will be proce-

durally barred on federal habeas review even if the state court

addressed the merits of the claim in the alternative.  See Glenn

v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).

a.   Petitioner's Pre-Voir
     Dire Instruction Claim

The third claim of the amended petition (Renumbered

Claim 3) asserts that the Trial Court committed error by in-

structing prospective jurors on the elements of robbery prior to

the actual selection of the jury.  This claim is barred from

31

habeas review because trial counsel did not object contemporane-
ously to the Trial Court's instructions.

At trial, before the Court began selecting a jury, the
Court gave some preliminary instructions to prospective jurors
which included the following:

> That brings me to the last important legal princi-
> ple.  That is that in order for you to return a guilty
> verdict in this case, the People obviously have to
> prove that on the particular days in question that the
> defendant committed the elements, each of the elements
> of that crime to your satisfaction and beyond a reason-
> able doubt.
>
> Now, obviously, I will come back at the end of the
> case and define the elements of the crime[s].  You will
> find, for example, that Robbery in the First Degree has
> six elements.  They have to prove that he took prop-
> erty, that he did it forcibly, took it from an owner,
> did it intentionally, and that he displayed what ap-
> peared to be a pistol.  I will explain to you under the
> law what displayed means.
>
> Assuming that the People prove each and every
> element to your satisfaction and beyond a reasonable
> doubt, at that point it becomes your obligation to
> return a guilty verdict.
>
> Obviously, on the other hand, if after reasonable
> discussion you have a reasonable doubt with respect to
> any one of the elements as to that particular crime,
> then of course, your obligation would be to return a
> verdict of not guilty

(Tr. 24-25).

On petitioner's direct appeal, the Appellate Division
rejected a claim based on the Trial Court's giving of this
instruction on the ground that it was unpreserved, apparently due

to trial counsel's failure to object.  People v. Farrell, supra,
28 A.D.3d at 244-45, 812 N.Y.S.2d at 102.  New York's contempora-
neous objection rule has routinely been upheld as an adequate and
independent state procedural bar sufficient to preclude federal
review.  See Garcia v. Lewis, supra, 188 F.3d at 79 ("[W]e have
observed and deferred to New York's consistent application of its
contemporaneous objection rules." (citation omitted)); Vargas v.
Keane, 86 F.3d 1273, 1280 (2d Cir. 1996) (procedural default
resulting from trial counsel's failure to object to prosecutor's
remarks is an independent and adequate state law ground for
rejection of a habeas claim); Watkins v. Perez, 05 Civ. 477
(GEL), 2007 WL 1344163 at *16 (S.D.N.Y. May 7, 2007) (Lynch, then
D.J., now Cir. J.) (same).

Therefore, this claim is barred from review and cannot
provide a basis for relief.

        b.   Petitioner's
            Justification
            Defense Claim

The fourth claim in the amended petition (Renumbered
Claim 4(b)) asserts, inter alia, that the Trial Court precluded
petitioner from presenting a defense to the assault and reckless
endangerment charges because it refused to give the jury an

instruction on the defense of justification (Amend. Petition at attachment pertaining to Ground Four).

At trial, petitioner testified that he believed he was being pursued by armed men wishing to carjack or harm him and it was this belief that caused his high-speed driving.  Although petitioner's counsel did request, and was denied, a jury instruction on the defense of duress (Tr. 3d 186-87), petitioner's counsel did not request an instruction on justification.

On direct appeal, the Appellate Division rejected this claim on the ground that it was unpreserved for appeal, apparently, because petitioner's counsel failed to request that instruction.  People v. Farrell, supra, 28 A.D.3d at 244-45, 812 N.Y.S.2d at 102.

This procedural bar, relied on by the state court, is an adequate and independent state law grounds for denying petitioner's claim.  See Sable v. Artus, 09 Civ. 7242 (WHP)(GWG), 2010 WL 3719270 at *13 (S.D.N.Y. Sept. 23, 2010) (Gorenstein, M.J.); accord Knight v. Walsh, 524 F. Supp. 2d 255, 286 (W.D.N.Y. 2007), citing Garvey v. Duncan, 485 F.3d 709, 714-15 (2d Cir. 2007) (holding that because a general objection to the admission of evidence or a charge to the jury fails to alert the court to the defendant's position, it is insufficient to preserve the issue for further review under § 2254).  Therefore, this claim is

34

barred from federal habeas review and cannot provide a basis for relief.[10]

    C.    Claims Reviewed
           <u>On the Merits</u>

    1.   <u>Standard of Review</u>

A state prisoner seeking a writ of habeas corpus must meet a stringent standard before a federal court can issue the writ. Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained these alternative standards set forth in sub-paragraph 1 as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a

---

[10] Even if petitioner's justification claim was not procedurally barred, it would be rejected on the merits for the same reasons set forth below concerning petitioner's duress instruction claim (<u>see</u>, <u>infra</u>, Part III(C)(4)).

set of facts that are materially indistinguishable from
a decision of this Court and nevertheless arrives at a
result different from our precedent."  <u>Williams v.
Taylor</u>, 529 U.S. 362, 405-06 (2000).  <u>See also</u> <u>Early v.
Packer</u>, 537 U.S. 3, 7-8 (2002) (<u>per</u> <u>curiam</u>) . . . .

Second, [petitioner] can satisfy § 2254(d) if he
can demonstrate that the [State] Court's decision
involved an "unreasonable application" of clearly
established law.  As we have explained:

"[A] federal habeas court may not issue the
writ simply because that court concludes in its
independent judgment that the state-court decision
applied [a Supreme Court case] incorrectly.  <u>See</u>
<u>Bell v. Cone</u>, 535 U.S. 685, 698-699 (2002);
<u>Williams</u>, <u>supra</u>, at 411.  Rather, it is the habeas
applicant's burden to show that the state court
applied [that case] to the facts of his case in an
objectively unreasonable manner."  <u>Woodford v.
Visciotti</u>, 537 U.S. 19, 24-25 (2002) (<u>per</u> <u>curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Waddington</u>

<u>v. Sarausad</u>, 555 U.S. 179, 190 (2009); <u>Brown v. Payton</u>, 544 U.S.

133, 141 (2005); <u>see</u> <u>also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-72

(2003); <u>Bierenbaum v. Graham</u>, 607 F.3d 34, 47 (2d Cir. 2010); <u>Hoi

Man Yung v. Walker</u>, 468 F.3d 169, 176 (2d Cir. 2006); <u>Hawkins v.

Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006); <u>Brown v. Artuz</u>,

283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable applica-

tion" set forth above, a state court may unreasonably apply

Supreme Court precedent "if the state court unreasonably extends

a legal rule established by the Supreme Court or if it unreason-

ably fails to extend a legal rule to a context in which the rule

36

reasonably should apply." <u>Serrano v. Fischer</u>, 412 F.3d 292, 296-97 (2d Cir. 2005); <u>see also</u> <u>Kennaugh v. Miller</u>, 289 F.3d 36, 45 n.2 (2d Cir. 2002).  "Unreasonableness is determined by an 'objective' standard." <u>Gersten v. Senkowski</u>, 426 F.3d 588, 607 (2d Cir. 2005), <u>quoting</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000); <u>Hawkins v. Costello</u>, <u>supra</u>, 460 F.3d at 242-43.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams v. Taylor</u>, <u>supra</u>, 529 U.S. at 412.  "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006) (internal quotations omitted); <u>accord</u> <u>Thaler v. Haynes</u>, --- U.S. ---, ---, 130 S. Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court.").  "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." <u>Kennaugh v. Miller</u>, <u>supra</u>, 289 F.3d at 42; <u>Davis v. Grant</u>, 532 F.3d 132, 140 (2d Cir. 2008).  "A petitioner [cannot] win habeas relief solely by demonstrating that the state court unreasonably applied Second

Circuit precedent." Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law. Lockyer v. Andrade, supra, 538 U.S. at 75 (The "objectively unreasonable" and "clearly erroneous" standards "are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unrea-sonableness."); see also Davis v. Grant, supra, 532 F.3d at 140; Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003). However, "'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court deci-sions so far off the mark as to suggest judicial incompetence.'" Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir.), cert. denied, 130 S.Ct. 739 (2009), quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

A habeas petitioner must also satisfy a high standard to challenge successfully a state court's factual ruling:

> [U]nder AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("This pre-sumption of correctness is particularly important when

reviewing the trial court's assessment of witness credibility."). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003).

Tolentino v. Brown, 05 Civ. 9002 (GBD)(THK), 2009 WL 1347699 at *7 (S.D.N.Y. May 5, 2009) (Daniels, D.J.) (adopting Report & Recommendation of Katz, M.J.); accord Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) ("[The] AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009); Lynn v. Bliden, 443 F.3d 238, 246-47 (2d Cir. 2006); Mask v. McGinnis, 233 F.3d 132, 139 (2d Cir. 2000); Nightengale v. Conway, 05 Civ. 1994 (GBD)(THK), 2009 WL 995178 at *8 (S.D.N.Y. Apr. 13, 2009) (Daniels, D.J.) (adopting Report & Recommendation of Katz, M.J.); see also Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005). "The clear and convincing evidence standard is somewhere between the preponderance of the evidence standard and the proof beyond a reasonable doubt standard." Bastien v. William, 03 Civ. 5749 (DLC), 2004 WL 2978283 at *4 (S.D.N.Y. Dec. 20, 2004) (Cote, D.J.), citing Addington v. Texas, 441 U.S. 418, 431 (1979). "The Second Circuit has interpreted this standard to require that the evidence support a conclusion

with a 'high degree of certainty.'"  Bastien v. William, supra,
2004 WL 2978283 at *4, quoting United States v. Chimurenga, 760
F.2d 400, 405 (2d Cir. 1985).

　　　　To be entitled to the AEDPA's deferential standard of
review, the state courts must have resolved the petitioner's
claims "on the merits."  Cotto v. Herbert, supra, 331 F.3d at
230; see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002)
("[I]n order for this deferential standard of § 2254 to apply, we
must first determine that the state court considered [peti-
tioner's claim] on its merits.");  Sellan v. Kuhlman, 261 F.3d
303, 309-10 (2d Cir. 2001).

　　　　The Second Circuit has instructed habeas courts to
"classify" a state court decision as either: (1) "fairly appear-
ing to rest primarily on federal law or to be interwoven with
federal law"; or (2) "fairly appearing to rest primarily on state
procedural law."  Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir.
2006).  "If the state court's decision falls into the first
category, and does not 'contain a clear statement of reliance on
a state procedural bar,' the decision must be treated as having
been made on the merits."  Mateo v. Fishkill Corr. Facility, 04
Civ. 3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007),
quoting Jimenez v. Walker, supra, 458 F.3d at 138.  To make this
classification, habeas courts in this circuit examine "(1) the

face of the state-court opinion, (2) whether the state court was
aware of a procedural bar, and (3) the practice of state courts
in similar circumstances." <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at
145 n.16.

        2.   Petitioner's Claim
           <u>Concerning His Identification</u>

      Petitioner's first claim in the amended petition
(Renumbered Claim 1) asserts that the pre-trial identification
procedure was unduly suggestive and that the resulting identifi-
cation testimony should have been suppressed (Amend. Petition
attachment pertaining to Ground One at 1-2).  Petitioner, who was
bald, 6'1'' tall, and weighed 225 pounds, was placed in lineups
with four fillers all of whom were 5'6'' tall, weighed between
140 and 160 pounds, and had some hair (Hr. 17-18).  At the <u>Wade</u>
hearing, New York City Police Detective Peter Van Dyk testified
that steps were taken to minimize any discrepancies in appearance
between petitioner and the fillers, including having all partici-
pants seated and wearing hats (Hr. 15-16, 18).  Petitioner's
counsel argued that any steps taken by the police to minimize
disparities between petitioner and the fillers were unsuccessful
and "the line-up [was], on its face, unfair" (Hr. 2d 72-74).  The
Trial Court held that the lineups were not unduly suggestive and,

in an appeal taken following trial, the Appellate Division, First
Department affirmed the Trial Court's ruling.  Because neither
the Trial Court nor the Appellate Division rejected these claims
on procedural grounds, I conclude that the state courts rejected
these claims on the merits.  Accordingly, these claims are
subject to the AEDPA's deferential standard of review.

> a.  Suggestiveness of
>     Pre-trial Identifications

     Petitioner asserts that the lineups were unduly sugges-
tive due to the height and weight disparities between himself and
the fillers and that the decision of the state courts was con-
trary to or an unreasonable application of Supreme Court prece-
dent.

> Identification evidence violates due process only if it
> is the product of procedures "so impermissibly sugges-
> tive as to give rise to a very substantial likelihood
> of irreparable misidentification." Simmons v. United
> States, 390 U.S. 377, 384 (1968).  Absent such sugges-
> tive procedures, however, courts "are content to rely
> upon the good sense and judgment of American juries" to
> weigh identification testimony "that has some question-
> able feature." Manson v. Braithwaite, 432 U.S. 98, 116
> (1977).

Smoot v. McGinnis, CV 98-4145(RR), 2001 WL 1328593 at *7

(E.D.N.Y. Sept. 20, 2001).  In addition,

> [t]he determination of whether a pre-trial
> identification was suggestive is a mixed question of
> law and fact. See Sumner v. Mata, 455 U.S. 591, 597 .

42

> . . .  As a result, the statutory presumption of cor-
> rectness that exists with regard to a state court's
> factual findings on habeas review, see 28 U.S.C. §
> 2254(e)(1), does not apply in determining the constitu-
> tionality of the procedures in this instance.  Sumner,
> 455 U.S. at 597 n. 10, 102 S.Ct. 1303; accord Alvarez
> v. Keane, 92 F. Supp. 2d 137, 152 (E.D.N.Y. 2000).
> Section 2254(e)(1)'s presumption of correctness does
> apply to any pure determination of fact made by the
> state courts.  See Sumner, 455 U.S. at 597, 102 S.Ct.
> 1303; accord Alvarez, 92 F. Supp. 2d at 152.

Robinson v. Artus, 664 F. Supp. 2d 247, 259 (W.D.N.Y. 2009).

I conclude that the decision of the state courts was not contrary to or an unreasonable application of Supreme Court law.  After conducting an evidentiary hearing at which it heard from witnesses and reviewed photographs of the challenged line-ups, the Trial Court expressly found no evidence of any sugges-tive procedures.  In her decision, Justice Cropper found that

> [t]he four fillers were similar in appearance to the
> defendant although they were shorter and lighter than
> defendant.  Photographs of the lineup reveal that these
> disparities were minimized by having the participants
> seated.  Differences in hair style were also minimized
> by having the participants wear painter's hats.

(Wade/Huntley Decision at 4, attached to Petitioner's Reply as Exhibit F).  Justice Cropper then made conclusions of law that

> [t]he lineup was fair and not unnecessarily suggestive.
> There is no requirement that the participants in the
> lineup have virtually identical appearances to the
> defendant.  It is enough that they are reasonably
> similar in appearance.  In this case the fillers were
> reasonably similar in appearance to the defendant
> despite discrepancies in age, height and weight.

43

(<u>Wade</u>/<u>Huntley</u> Decision at 6 (citations omitted), attached to
Petitioner's Reply as Exhibit F).

> The Appellate Division affirmed, stating that

> > [t]he [trial] court properly denied defendant's motion
> > to suppress lineup identifications.  The record estab-
> > lishes that the height and wight disparities between
> > defendant and the other lineup participants were suffi-
> > ciently minimized by having the participants seated and
> > their torsos covered.

<u>People v. Farrell</u>, <u>supra</u>, 28 A.D.3d at 244, 812 N.Y.S.2d at 101.

> Petitioner offers no new evidence controverting Justice
Cropper's factual findings, and I must, therefore, presume them
to be correct.  28 U.S.C. § 2254(e)(1).  On those facts, the
state court did not unreasonably apply federal law, nor was the
decision contrary to federal law.  "Due process does not, after
all, require line-up participants to be the same age or to have
identical physical characteristics.  It requires only that a
defendant not stand out in such a way as to encourage his identi-
fication by any witness."  <u>Smoot v. McGinnis</u>, <u>supra</u>, 2001 WL
1328593 at *7, <u>citing</u> <u>United States v. Maldonado-Rivera</u>, 922 F.2d
934, 974 (2d Cir. 1990) <u>and</u> <u>United States v. Fernandez</u>, 456 F.2d
638, 641-42 (2d Cir. 1972) (stating that photo spread would not
be impermissibly suggestive if two out of eleven persons depicted
matched the robber's characteristics).

Additionally, the Trial Court properly held that conducting the lineups with the participants in a seated position was an acceptable method to minimize height disparities.  <u>See</u>, <u>e</u>.<u>g</u>., <u>Moreno v. Kelly</u>, 95 Civ. 1546 (JGK), 1997 WL 109526 at *9 (S.D.N.Y. Mar. 11, 1997) (Koeltl, D.J.) ("There is also no merit to [petitioner's] claim of suggestiveness due to the difference in his height from that of the other men in the lineup.  Any height difference was minimized because all of the defendants were initially seated . . . ."); <u>Tavarez v. LeFevre</u>, 649 F. Supp. 526, 530 (S.D.N.Y. 1986) (Kram, D.J.) ("[S]ince all the lineup participants were seated, any height difference was substantially minimized").

In his reply, petitioner argues that the lineups were suggestive because Virani testified at trial that one of the witnesses at the lineups asked that all the lineup participants stand up and approach the window so he could get a better look at them (Reply at 18; Tr. 2d 217-18).  At trial, Virani testified that he asked for each participant to walk forward one at a time, "but I ask[ed] two times for this gentleman [the petitioner] so I can -- so I can take a very good look for him that he's the guy" (Tr. 2d 242).  Detective Van Dyk testified, as he did at the suppression hearing, that all participants in the lineup were seated and that he did not recall any of the participants stand-

ing up and approaching the window (Tr. 2d 403).  Petitioner
argues that requiring the lineup participants to stand disclosed
the height difference and undid the effects of having all partic-
ipants remain seated.  However, petitioner has never properly
exhausted this claim in state court.

It is fundamental that a state prisoner seeking to
vacate his conviction on the ground that his federal constitu-
tional rights were violated must first exhaust all available
state remedies.  28 U.S.C. § 2254(b); Baldwin v. Reese, 541 U.S.
27, 29 (2004); Picard v. Connor, 404 U.S. 270, 275 (1971); Fama
v. Comm'r of Corr. Servs., supra, 235 F.3d at 808.

Unexhausted claims are deemed exhausted if the peti-
tioner no longer has any remedy available in the state courts.
Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Nevarez v.
Artuz, 99 Civ. 2401 (LBS), 2000 WL 718450 at *3 (S.D.N.Y. June 5,
2000) (Sand, D.J.).  In the absence of a showing of cause for and
prejudice from the failure to raise the claim in conformity with
state procedural requirements, or a fundamental miscarriage of
justice, such a claim, although deemed exhausted, will be for-
feited and barred from serving as the basis for habeas relief.
Norwood v. Hanslmaier, No. 93 CV 3748, 1997 WL 67669 at *2
(E.D.N.Y. Feb. 11, 1997); accord Parker v. Ercole, 582 F. Supp.
2d 273, 290 (N.D.N.Y. 2008).

New York law provides that trial testimony is inadmissable on an appeal of a decision from a suppression hearing.  People v. Giles, 73 N.Y.2d 666, 671-72, 541 N.E.2d 37, 40, 543 N.Y.S.2d 37, 40 (1989); People v. Arkin, 270 A.D.2d 142, 143, 706 N.Y.S.2d 321, 321 (1st Dep't 2000).

In order to exhaust his claim that trial testimony demonstrated the suggestiveness of the lineups, petitioner was required to first present this argument to the Trial Court by moving to reopen the suppression hearing and offering the testi-mony there.  People v. Singleton, 238 A.D.2d 146, 146, 655 N.Y.S.2d 503, 504 (1st Dep't 1997) ("Defendant's failure to move to reopen the suppression hearing precludes references to evi-dence presented at trial."); accord People v. Rivera, 171 A.D.2d 560, 561, 567 N.Y.S.2d 266, 267 (1st Dep't 1991); People v. Ortiz, 165 A.D.2d 766, 767, 563 N.Y.S.2d 790, 791 (1st Dep't 1990).  Petitioner, however, never sought to reopen the suppres-sion hearing based on the trial testimony.

Because petitioner never properly argued in the state court that the trial testimony showed the lineup procedure to be suggestive, this claim has never been exhausted and is, there-fore, not properly before this Court.[11]

---

[11] Respondent's admission that "[p]etitioner's [sic] has
(continued...)

In sum, the Trial Court's and Appellate Division's holdings permitting the identification evidence were not contrary to, or an unreasonable application of clearly established Supreme Court precedent and petitioner's claim should be denied.

### 3.   Petitioner's Free Exercise Claim

The second claim in the amended petition (Renumbered Claim 2) asserts that the "state courts refusal to allow [petitioner], a practicing Jew, to celebrate the Sabbath, his religious holidays, violat[ed] the Federal and State Constitutional right to practicing his religion" (Amend. Petition attachment pertaining to Ground Two at 1-2).

At trial, during jury deliberations, Petitioner's counsel had the following colloquy with the Court:

> The Court:     For the record this is the case on trial continued.
>
> The record should reflect that the jury has sent out a note asking for the testimony of Mr. Rao and Mr. Gni.

---

[11](...continued)
exhausted all of his claims" (Resp'ts Opp. at 27), is not a waiver of the failure to exhaust because petitioner first advanced this argument in his reply papers.  Respondent could not have intended to waive the requirement of exhaustion with respect to claims that were not asserted by the time respondent opposed the petition.

Mr. Meyer:        Your honor, I have an application.

The Court         Yes.

Mr. Meyer:        Your Honor, I have an application that
                  we recess at this point during the
                  trial.  The defendant, as your Honor is
                  now well aware, is of Jewish faith and
                  is required, accordingly, to be inside
                  before sundown.  He wants to catch a bus
                  now so he will be taken back, and also
                  he indicated that he spoke with his
                  rabbi who indicated he spoke with you,
                  and you had indicated you would have him
                  at Rikers Island by sundown so he could
                  celebrate.

The Court:        Let me say, counsel, I called up Correc-
                  tions yesterday to see if there was any
                  way they could get a [bus].  Even if I
                  discharged him now, there is no bus
                  available now to go back.

Mr. Meyer:        It is 3:35.

The Court:        I understand.  He won't go back until
                  eight anyway.  There is no bus avail-
                  able, and his trial takes precedence
                  over Sabbath services.

The Defendant:  That is all I wanted to hear on record.

The Court:        You got it on the record.

Mr. Meyer:        He wanted it on the record.

The Court:        Fine.  As I said, I called yesterday to
                  ask if we could get a bus to bring him
                  back early.  They stated no.  There is
                  no special bus to bring him back.

                  This is a trial.  If the jury was just
                  out and they hadn't said anything, it
                  would be one thing.  I would recess for
                  the day, but they asked for testimony,

                              49

so I have to read it.  They have been
here for two weeks.

. . . .

[Jurors enter for readback of testimony
and indicate that they have reached
unanimous verdicts on some of the
counts.]

. . . .

Court Clerk:     Pursuant to a conversation I had yester-
day with Officer Rodriguez, who works in
Captain Laury's (ph) office, 3:00 or
3:30 bus could not have been guaranteed
in order to get the defendant back to
Rikers Island for Jewish Services

(Tr. 3d 324-27).

The Appellate Division rejected this claim on direct

appeal stating

The [trial] court did not violate defendant's
right to free exercise of religion by denying his
request for an adjournment on a Friday afternoon so he
could return to Rikers Island before sundown to observe
the Jewish Sabbath.  The jury was in the midst of
deliberations, had just requested a readback of testi-
mony and indicated it had already reached a verdict on
several of the charges.  Under these circumstances, the
court had a legitimate and compelling interest in
completing the trial without the requested weekend
adjournment (see People v Hall, 2 AD3d 227, 228 [2003],
lv denied 2 NY3d 741 [2004]; People v Rosemond, 270
AD2d 293 [2000], lv denied 95 NY2d 803 [2000]).  In any
event, defendant made his request for an adjournment at
a time of day when it was no longer possible to deliver
him to Rikers Island prior to the commencement of the
Sabbath.

People v. Farrell, supra, 28 A.D.3d at 244, 812 N.Y.S.2d at 101.

Because the Appellate Division rejected this claim on the merits, it is subject to the AEDPA's deferential standard of review.

Where, as here, a free-exercise claim is asserted in the context of a habeas corpus petition, relief is appropriate where there is "an error of criminal procedure of constitutional magnitude that undermined the validity of the conviction . . . ." Eubanks v. Lempke, 08 Civ. 10925 (KTD), 2011 WL 744770 at *4 (S.D.N.Y. Mar. 1, 2011) (Duffy, D.J.), quoting Morgan v. Walsh, 01 Civ. 1360 (DLC)(THK), 2002 U.S. Dist. LEXIS 26734 at *20 n.6 (S.D.N.Y. Nov. 27, 2002) (Katz, M.J.), adopted 2003 WL 22019835 (S.D.N.Y. Aug. 27, 2003) (Cote, D.J.).

Here, petitioner has not shown that the state court unreasonably applied federal law to these facts, nor that the decision was contrary to federal law.  "[T]he states court's decision to protect the integrity of jury deliberations is one of controlling public interest." Eubanks v. Lempke, supra, 2011 WL 744770 at *4, citing Hoyt v. Lewin, 444 F. Supp 2d 258, 266-278 (S.D.N.Y. 2006) (Rakoff, D.J.) ("There is a compelling government interest in declining to interrupt jury deliberations, particu-larly given the approach of a weekend.  Thus, the trial judge could properly conclude that the need to continue deliberations outweighed the very precious and obviously sensitive right of a

person to exercise his or her religion." (internal quotation marks omitted)); accord Morgan v. Walsh, 120 F. App'x 389, 390 (2d. Cir. 2005) ("[P]etitioner's request was for a three-day adjournment; we cannot say that the court's reasons for denying this adjournment were not based on compelling interests."). Petitioner offers neither evidence nor argument explaining how the failure to return him to Rikers Island before sundown on the date in issue impugned the validity of the jury's verdict

Furthermore, as noted in the colloquy quoted above, at the time petitioner made his application, it was no longer possible to return him to Rikers Island before sundown.  Given the deference mandated by the AEDPA, it cannot be said that the state court's decision was contrary to or an unreasonable appli-cation of clearly established Supreme Court precedent.

4.   Petitioner's Right-to-
Present-a-Defense Claim

The fourth claim in the amended petition (Renumbered Claim 4(a)) asserts, inter alia, that the Trial Court precluded petitioner from presenting a defense to the assault and reckless endangerment charges because it refused to give the jury an instruction on the defense of duress (Amend. Petition at attach-ment pertaining to Ground Four).

At trial, petitioner testified that he believed he was being pursued by armed men wishing to carjack or harm him and it was this belief that caused his high-speed driving.

At the charge conference, the following colloquy took place:

Mr. Meyer:      Your Honor, with respect to the defense
                of duress, I ask that the Court charge
                the defense of duress.  The defendant
                indicated to this Court, through his
                testimony that two guys that he regarded
                as carjackers pointed guns at him, and
                he was in fear of his life, and any
                reasonable person in that position would
                have done the same.

The Court:      Okay. Well, the problem is, that hap-
                pened at 70th Street.  The crash hap-
                pened at 80th street.  There was nothing
                preventing him from pulling his car
                over.

Mr. Meyer:      He said they were in hot pursuit behind
                him on Park Avenue.

The Court:      I decline to charge that.  You have an
                objection.

                        . . . .

                As far as the contentions of the parties
                go, I don't marshal the evidence.  I
                will merely indicate it is the defen-
                dant's position that he did not commit
                any of the crimes and that this collid-
                ing with this vehicle was because of the
                fact that he was followed by other peo-
                ple, or whatever it may be.

                You are free to discuss at the time of
                this incident, when he crashed the car,

53

> he did it because he was in abject
> [fear], but I won't charge duress.

Mr. Meyer:      Well, I am making that request.

The Court:      I Understand.   I will not charge

(Tr. 3d 186-87).

On direct appeal, the Appellate Division rejected this claim stating "[t]he [trial] court properly denied defendant's request for a charge on the defense of duress, since there was no factual basis for such a charge (see Penal Law § 40.00)." People v. Farrell, supra, 28 A.D.3d at 244-45, 812 N.Y.S.2d at 102. Because the Appellate Division rejected this claims on the merits, that Court's decision is subject to the AEDPA's deferential standard of review.

In general, "it is not the province of the federal habeas court to reexamine state court determinations on state law questions." Estelle v. McGuire, 502 U.S. 62, 63 (1991).  However, "[o]nce states have promulgated laws to define criminal conduct . . . federal due process protects a defendant from conviction unless he is shown in a fair proceeding to have violated [state] laws." Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001). "Where an error in a jury instruction is alleged . . . [t]he question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself

54

so infected the entire trial that the resulting conviction
violates due process.'"  Davis v. Strack, supra, 270 F.3d at 123,
quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973), citing
Estelle v. McGuire, supra, 502 U.S. at 72.

"[A] finding that the petitioner was erroneously
deprived of a jury instruction to which he was entitled under
state law is the first step in the determination [of] whether
that error violated the petitioner's federal due process rights."
Davis v. Strack, supra, 270 F.3d at 123.

Under New York law, petitioner was entitled to a jury
instruction on duress provided that any reasonable view of the
evidence could support a finding of duress.  See, e.g., New York
v. Farnsworth, 65 N.Y.2d 734, 735, 481 N.E.2d 552, 552, 492
N.Y.S.2d 12, 12 (1985) ("Where the issue on appeal is whether a
particular theory of defense should have been charged to the
jury, the evidence must be viewed in the light most favorable to
the defendant.").

New York Penal Law § 40.00 provides:

In any prosecution for an offense, it is an affirmative
defense that the defendant engaged in the proscribed
conduct because he was coerced to do so by the use or
threatened use of unlawful physical force upon him or a
third person, which force or threatened force a person
of reasonable firmness in his situation would have been
unable to resist.

55

The defense of duress . . . is not available when a person intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress.

The Appellate Division properly held that "there was no factual basis for such a charge" because no reasonable view of the evidence supported a jury instruction on the law of duress. Petitioner (1) confessed to all four robberies with signed confessions which the Supreme Court held to have been freely and voluntarily made and New York City Police Detective Thomas Hacket testified that the confessions contained details of which the police department was not previously aware (Tr. 3d 30-49); (2) indisputably drove the stolen Nissan, struck the livery cab, and then took off on foot (Tr. 2d 45); (3) hid under a car even after he was aware that the police were nearby -- an action inconsistent with someone running from armed carjackers (Tr. 3d 155); (4) wore a bracelet which Prieto, the garage attendant, positively identified as his own (Tr. 358); (5) testified that all of the items recovered from the Nissan were his except for the handgun, handcuffs, the woolen ski mask, and a roll of nickels (Tr. 3d 175-76); (6) was positively identified as the perpetrator of armed robberies by three people prior to trial (Tr. 2d 217-18, 267-68, 377-79); (7) could not identify any characteristics of the men who allegedly beat and coerced him

into signing the confessions other than that they were white (8) could not identify any characteristics of the man who allegedly assaulted him in the ambulance (Tr. 3d 157); and (9) according to his own version of events, acknowledged his awareness of the possibility that the Nissan was stolen yet did not consider the possibility that the unmarked car containing the individuals with guns drawn were the police rather than a carjacker or someone looking to cause him harm (Tr. 3d 91-92, 147).  Petitioner's self-serving assertion of duress, which is inconsistent with uncontroverted facts, did not require the Trial Court to instruct the jury on the affirmative defense of duress.  <u>See</u> <u>Blazic v. Henderson</u>, <u>supra</u>, 900 F.2d at 540 ("[A] court is not required to adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted.").

Because "due process does not require the giving of a jury instruction when such charge is not supported by the evidence," <u>Blazic v. Henderson</u>, <u>supra</u>, 900 F.2d at 541, the Trial Court's failure to charge the jury as to petitioner's claim of duress does not violate New York State or federal law.[12]

---

[12] This argument applies with equal force to petitioner's justification defense claim.  <u>See</u> <u>Blazic v. Henderson</u>, <u>supra</u>, 900 F.2d at 540 (Under New York law, "a court is not required to adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted."), <u>citing</u>
(continued...)

Even if it was error not to give a duress (or a justification) charge under New York State law, petitioner would still not be entitled to habeas relief.  "For an erroneous state jury charge to result in a federal constitutional deprivation, 'the ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process." Blazic v. Henderson, supra, 900 F.2d at 541, citing Cupp v. Naughten, supra, 414 U.S. at 147.  Evaluating petitioner's claim "in the context of the entire record" and the overwhelming array of evidence against petitioner, it is clear that "no error of constitutional magnitude had occurred" as I find that the jury would not have reached a different verdict had that instruction been given.  See Henderson v. Kibbe, 431 U.S. 145, 153-55 (1977). Although no duress instruction was given, the Trial Court did remind the jurors of petitioner's version of events:

> Now, on the other hand, through the cross-examina-
> tion of the aforesaid People's witnesses, through the
> defendant's own testimony, and through the defendant's
> exhibits in evidence, Defendant's A, B, it is the
> defendant's contention that he just signed whatever
> Detective Hackett gave him.  Further, that he struck
> the car, because he was fleeing from unknown people who
> pointed guns at him, that he didn't know the gun was in
> the car, that he never robbed anybody at any time and

---

[12](...continued)
People v. Butts, 72 N.Y.2d 746, 750, 533 N.E.2d 660, 663, 536 N.Y.S.2d 730, 733 (1988).

that, therefore, he must be found not guilty of all of
the charges

(Tr. 3d 278).

An evaluation of petitioner's version of events was
necessarily an essential part of the jury's deliberations.  If
the jury had chosen to credit petitioner's version, it could not
have found petitioner guilty of assault in the first degree
because an essential element would not have been proven beyond a
reasonable doubt, namely, that petitioner engaged in the underly-
ing conduct "under circumstances evincing a depraved indifference
to human life" (Tr. 3d 303).  That element was defined by the
Trial Court in the following manner:

> [A] person acts with depraved indifference to
> human life when his conduct far beyond reckless is so
> wanton, so deficient in moral sense and concern, so
> devoid of regard for the life or lives of another and
> so blameworthy as to warrant the same criminal liabil-
> ity which the law imposes upon a person who intention-
> ally causes serious physical injury to another

(Tr. 3d 304).  For the jury to have found the element of depraved
indifference proven beyond a reasonable doubt, the jury must have
found petitioner's version of events incredible.

Similarly, if the jury had credited petitioner's
version it could not have found him guilty of reckless endanger-
ment as that charge also contained an element requiring depraved
indifference to human life (Tr. 3d 307).

59

Because the jury necessarily had to evaluate peti-
tioner's version of events and decide which version, his or the
prosecution's, to credit, and because the jury decided to reject
petitioner's version, I find that any alleged error on the part
of the Trial Court in refusing to instruct the jury on the
defense of duress did not rise to "constitutional magnitude"
because the jury would not have reached a different verdict had
that instruction been given.

     5.   Petitioner's
         Apprendi Claim

The sixth claim in the amended petition (Renumbered
Claim 5) asserts that petitioner's sentence as a persistent
violent felony offender is unconstitutional under Apprendi v. New
Jersey, 530 U.S. 466 (2000), because the maximum sentence to
which he was subject was increased by findings made by the Trial
Court (namely, that he had committed certain predicate violent
felonies) rather than a jury.

This claim is without merit.  The Supreme Court in
Apprendi expressly excepted prior convictions, such as those used
to enhance petitioner's sentence, from the sentencing-related
factual issues that must be resolved by the jury.  Apprendi v.
New Jersey, supra, 530 U.S. at 490.

60

6.   Petitioner's Brady Claim

The seventh claim in the amended petition (Renumbered Claim 6) asserts that the prosecution violated petitioner's rights under Brady v. Maryland, 373 U.S. 83 (1963) by failing to turn over a police report showing that the police arrested another individual for one of the robberies to which petitioner confessed (Amend. Petition attachment pertaining to Ground Seven).  Petitioner learned of this police report through a Freedom of Information Law request he made during the appeals stage of his case.

The undisclosed police report does not constitute Brady material.  The report recounts the arrest of a suspect for the robbery of the New York Candy Store, committed on November 6, 2001 (Exhibit A to Petitioner's Reply).  Although petitioner confessed to this robbery (Hr. 2d 17-18), he was not charged with this crime and no evidence pertaining to this offense was offered at trial.[13]  Because this evidence could not have exculpated

_____

[13] The only evidence admitted at trial pertaining to uncharged crimes was a single piece of testimony given by New York City Police Detective Thomas Hackett regarding unidentified "incidents" to which petitioner did not confess to:

Prosecution:   Were there any other incidents about which you questioned the defendant that he refused
(continued...)

61

petitioner with respect to any of the crimes of which he was
convicted and could not have been used to impeach a prosecution
witness, this undisclosed report does not constitute <u>Brady</u>
material and the prosecution was not under an obligation to
furnish it to petitioner.

> 7.   Petitioner's Ineffective-
>       Assistance-of-
>       <u>Trial-Counsel Claims</u>
>
>       a.   Legal Principles
>            Pertaining to Ineffective-
>            <u>Assistance-of-Counsel Claims</u>

In order to prevail on an ineffective assistance of
counsel claim, a habeas petitioner must meet the now-familiar,
two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S.
668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness
> must be whether counsel's conduct so undermined the
> proper functioning of the adversarial process that the
> trial cannot be relied on as having produced a just
> result.
>
> *     *     *

---

[13](...continued)
                to speak about?

Witness:          Yes.

(Tr. 3d 47).  This testimony does not alter my analysis regarding
the nature of the undisclosed police report.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000); Guerrero v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v. United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v. Leonardo, 162 F.3d 81, 84-85 (2d Cir. 1998).  This same standard applies to claims of ineffective assistance of appellate counsel. Mercer v. Herbert, 133 F. Supp. 2d 219, 238 (W.D.N.Y. 2001) ("A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel.").  See also Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Hernandez v. Edwards, 98 Civ. 6704 (MBM), 2001 WL 575594 at *4 (S.D.N.Y. May 29, 2001) (Mukasey, D.J.).

In determining whether counsel's performance was objectively deficient, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, supra, 466 U.S. at 689 (internal quotation marks omitted).

In the appellate context, "it does not suffice 'for the habeas petitioner to show merely that counsel omitted a nonfrivolo us argument.'" McKee v. United States, supra, 167 F.3d at 106, quoting Mayo v. Henderson, supra, 13 F.3d at 533. "Rather, it is the hallmark of effective appellate advocacy to choose wisely which claims are brought on appeal." Fletcher v. Mann, 956 F. Supp. 168, 173 (N.D.N.Y. 1997) (internal quotation marks omitted). Thus,

> [i]n assessing the reasonableness of the arguments posed on appeal versus other possible nonfrivolous arguments, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. . . . Generally, only when ignored issues "are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

Larrabee v. Smith, 14 F. Supp. 2d 235, 239 (N.D.N.Y. 1998),
quoting Mayo v. Henderson, supra, 13 F.3d at 533; see Torres v.
Irvin, 33 F. Supp. 2d at 257, 266 (S.D.N.Y. 1998) (Cote, D.J.).

      Because the test is conjunctive, a habeas petitioner's
failure to satisfy either prong requires that the challenge to
the conviction be rejected.  Strickland v. Washington, supra, 466
U.S. at 697.

                b.   Application of the
                    Foregoing Principals
                    to the Facts of this Case

                    i.  Petitioner's
                       Ineffective-Assistance
                       Claims Arising Out
                       of the Wade Hearing

      Petitioner argues, in the first part of his fifth claim
in the amended petition (Renumbered Claims 7(a) and 7(b)), that
his trial counsel provided ineffective assistance by (1) failing
to develop fully the facts at the suppression hearing and (2)
failing to move to reopen the hearing.  These claims are based on
Virani's trial testimony that the participants in the lineup each
stood and approached the window (Amend. Petition attachment
pertaining to Ground 5, ¶ B).

1.   Failure to Develop
Facts at the Wade Hearing

Petitioner claims that he was deprived of his constitutional right to the effective assistance of trial counsel as a result of his trial counsel's failure to adduce the fact that all participants stood up during the lineup.  However, the record is clear that trial counsel did thoroughly cross-examine Detective Van Dyk regarding the weight disparity between petitioner and the fillers and elicited testimony from Van Dyk that the participants were seated during the lineups (Hr. 17-23).  Petitioner does not claim that he told his attorney at or prior to the hearing that petitioner had stood up at the lineup and that Van Dyk was incorrect, nor does he explain why he failed to disclose this purported fact to counsel.  Because there is no evidence that petitioner's counsel was ever advised that there were additional facts to develop concerning the lineup, it was entirely appropriate for petitioner's counsel to let Van Dyk's testimony stand and not run the risk of adducing additional consistent testimony. Given the presence of valid strategic reasons for counsel's conduct, petitioner cannot demonstrate that counsel's conduct was "so egregious as to amount to a failure to provide minimal professional representation." Roberts v. Scully, 875 F. Supp. 182, 195 (S.D.N.Y. 1995) (Wood, D.J.), citing Strickland v.

66

Washington, supra, 466 U.S. at 690 (habeas court weighing an ineffective-assistance claim must determine whether, in light of all the circumstances, counsel's conduct was "outside the wide range of professionally competent assistance.").

                    2.    Failure to Move
                          to Reopen Hearing

        Petitioner next claims that he was deprived of his constitutional right to the effective assistance of trial counsel as a result of his trial counsel's failure to move to reopen the suppression hearing after Virani's trial testimony.  However, petitioner was not entitled to have the hearing reopened under New York law; thus, trial counsel was not deficient under Strick-land's first prong.

        "The purpose of a Wade hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." Twitty v. Smith, 614 F.2d 325, 333 (2d Cir. 1979), citing United States v. Wade, supra, 388 U.S. at 242.  Under New York Criminal Procedure Law Section 710.40(4), a trial court has discretion to reopen a Wade hearing if "additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion

[to suppress]" (emphasis added).  These facts must go "to the issue of the official suggestiveness such that they would materially affect or have affected the earlier <u>Wade</u> determination." <u>Lynn v. Bliden</u>, <u>supra</u>, 443 F.3d at 249, <u>quoting</u> <u>People v. Clark</u>, 88 N.Y.2d 552, 555, 670 N.E.2d 980, 981, 647 N.Y.S.2d 479, 480 (1996); <u>Morrison v. Ercole</u>, 05-CV-5246 (JFB), 2007 WL 2362206 at *9-*10 (E.D.N.Y. Aug. 15, 2007).

A defendant cannot move to reopen a suppression hearing based on "newly discovered evidence" when that evidence is something that logically the defendant knew or should have know all along.  <u>See</u>, <u>e.g.</u>, <u>People v. Kneitel</u>, 33 A.D.3d 816, 816, 822 N.Y.S.2d 602, 603 (2d Dep't 2006) ("Here, the additional facts concerned the location where the defendant parked his car prior to his arrest.  Since this was a fact of which the defendant is presumed to have knowledge, the application to re-open the hearing was properly denied." (citations omitted)); <u>People v. Knowles</u>, 12 A.D.3d 939, 940, 785 N.Y.S.2d 561, 562-63 (3d Dep't 2004); <u>People v. Morales</u>, 281 A.D.2d 182, 182, 721 N.Y.S.2d 526, 527 (1st Dep't 2001).

Petitioner surely knew whether he was seated throughout the lineup or was made to stand up and approach the window. Therefore, Virani's version of events, even if true, could not constitute an "additional pertinent fact[]" which could not "have

been discovered by the defendant . . . with reasonable diligence
before the determination of the [suppression] motion."  N.Y.
Crim. Proc. L. § 710.40(4).  Thus, it appears that there was no
valid legal basis on which petitioner's trial counsel could have
sought to reopen the <u>Wade</u> hearing.

      Accordingly, petitioner's claim that his trial counsel
was ineffective for failing to seek to reopen the <u>Wade</u> hearing
lacks merit.

                      ii. Petitioner's
                         Ineffective-Assistance
                         Claims Arising Out
                         <u>of his Sentencing</u>

      Petitioner's eighth claim in the amended petition
(Renumbered Claim 7(c)) asserts, <u>inter</u> <u>alia</u>, that trial counsel
was ineffective for failing to "challenge [petitioner's] sen-
tence," failing to "challenge [petitioner's] sentence to consecu-
tive sentence of undischarged sentences," and for "not challeng-
ing . . . the procedures of sentencing [petitioner] without prior
notification of his prior conviction" (Amend. Petition attachment
pertaining to Ground Eight at 2-3).

      Reading petitioner's claims in conjunction with the
references he makes to pages from his Affidavit in Support of his
application for leave to appeal the denial of his 440.30 Motion,

I construe petitioner to be arguing that his trial counsel was
ineffective because he (1) failed to object when the Trial Court
(a) erroneously sentenced petitioner to consecutive sentences
instead of concurrent sentences, putatively in violation of New
York Penal Law Section 70.25 and (b) erroneously sentenced
petitioner to consecutive sentences for either multiple offenses
which constitute one continuous act or multiple offenses which
substantively merge into one offense; and (2) for failing to
object when the Trial Court sentenced petitioner without provid-
ing him with a statement setting forth his prior violent felony
convictions as required by New York Criminal Procedure Law
Sections 400.16(2) and 400.15(2).

     As to the first set of sentencing claims, after an
independent review of petitioner's sentencing, it is clear that
the Trial Court sentenced petitioner in conformity with New York
Penal Law Section 70.25 and did not sentence petitioner
consecutively for any offense which constituted one act or for
offenses which substantively merged.  Section 70.25(1) and (2)
provide that

          (1)  When multiple sentences of imprisonment are imposed on
               a person at the same time . . . the sentence or sen-
               tences imposed by the court shall run either concur-
               rently or consecutively [and if] the court does not
               specify the manner in which a sentence imposed by it is
               to run, the sentence shall run . . . . concurrently
               with all other terms.

70

(2) When more than one sentence of imprisonment is imposed
on a person for two or more offenses committed through
a single act or omission, or through an act or omission
which in itself constituted one of the offenses and
also was a material element of the other, the sentences
. . . must run concurrently.

Here, petitioner was sentenced to twenty-five years to
life for each of four counts of robbery in the first degree, to
run consecutively to each other and all other sentences, twenty-
five years to life for each of three counts of assault in the
first degree, to run concurrently with each other and consecu-
tively to the sentences imposed for the robbery counts, fifteen
years to life for one count of criminal possession of a weapon in
the second degree, to run concurrently with all other counts,
twelve years to life for criminal possession of a weapon in third
degree, to run concurrently with all other counts, and three-and-
a-half to seven years for one count of reckless endangerment,
also to run concurrently with all other counts (S. 12-14; S. 2d
at 2).

The Trial Court specified whether the sentences will
run concurrently or consecutively, thereby complying with Section
70.25(1). The Trial Court also imposed sentences concurrent to
each other for each of the three Assault counts because the
assaults were committed by a single act; and similarly sentenced
petitioner to concurrent terms for the two weapons possession

71

counts and the reckless endangerment count thereby complying with Section 70.25(2).  Each of the robbery counts was a separate and distinct act and, therefore, petitioner was properly sentenced to consecutive terms for each of the robbery counts.  The robbery counts were also separate and distinct acts from the acts which caused the assaults and the weapons and reckless endangerment counts.  Therefore, petitioner was properly sentenced to consecutive sentences for the four robbery counts and the remaining counts.

Consequently, the objections petitioner claims his counsel was required to assert would have been meritless.  Accordingly, counsel's failure to make such objections did not constitute ineffective assistance; "[f]ailure to make a meritless argument does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), abrogated on other grounds, Schindler v. Nat'l Org. for Women, 537 U.S. 393, 403 n.8 (2003); accord United States v. Noble, 363 F. App'x 771, 773 (2d Cir. 2010).

As to petitioner's claim that he was not given a required statement of his prior violent felony convictions, even assuming the truth of his allegation, I conclude that petitioner has not met the prejudice prong of the Strickland test.  As noted above, the second prong of the Strickland test -- actual preju-

dice -- requires the petitioner to show that, but for trial
counsel's errors, there is a "reasonable probability" that the
result of the trial would have been different.  "A reasonable
probability is a probability sufficient to undermine confidence
in the outcome."  Strickland v. Washington, supra, 466 U.S. at
694.

Petitioner was sentenced as a persistent violent felony
offender pursuant to New York Penal Law Section 70.08.  Under New
York Criminal Procedure Law Sections 400.15(2) and 400.16(2), "a
statement must be filed by the prosecutor before [a defendant can
be sentenced as a persistent violent felony offender] setting
forth the date and place of each alleged predicate violent felony
conviction."  Although the record does not clearly establish
whether this statement was filed at the sentencing proceeding,
the Trial Court reviewed petitioner's criminal history and then
deemed him to be a persistent violent felony offender (S. 2-4).
At that same hearing, petitioner was given an opportunity to
speak on sentencing which he did (S. 6-8).  Petitioner not only
did not contest the predicate felony convictions on which the
Trial Court relied in finding him to be a persistent violent
felony offender, the petitioner admitted, during the sentencing
proceeding, that "[he had] been a criminal all [his] life" (S. 8-
9).  Assuming without deciding that petitioner was not provided

73

with the required statement, it is unfathomable that the prosecu-
tor would not have promptly provided the statement to petitioner
had an objection been made; such an objection would have at most
achieved an adjournment of the sentencing preceding.  I therefore
conclude that trial counsel's failure to make this objection (if
the objection was warranted) did not cause the petitioner any
prejudice.

                    iii. Petitioner's
                         Ineffective-Assistance
                         Claims Related to
                         Jury Instructions

        Petitioner, in the latter part of the fifth claim in
his amended petition (Renumbered Claim 7(e)) asserts that he was
deprived of his constitutional right to the effective assistance
of trial counsel based on trial counsel's failure to develop or
articulate a request for a justification charge and counsel's
failure to object to the Trial Court's failure to charge the jury
on duress (Amend. Petition attachment pertaining to Ground Five
3-4).

        As explained in Part III(C)(4), supra, petitioner was
not entitled to a duress or justification charge as a matter of
New York State law.  Accordingly, counsel's failure to seek such
charges did not constitute ineffective assistance; "[f]ailure to

make a meritless argument does not amount to ineffective assistance." United States v. Arena, supra, 180 F.3d at 396; accord United States v. Noble, supra, 363 F. App'x at 773.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied in all respects.

        In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (citation and internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

        I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this

Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Loretta Preska, United States District Judge, 500 Pearl Street, Room 2220, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Preska.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        December 8, 2011

                                        Respectfully submitted,

                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies mailed to:

Mr. Dennis Farrell
03-A-3346
Green Haven Correctional Facility
Route 216
Stormville, New York 12582

Leilani Rodriguez, Esq.
Assistant Attorney General
State of New York
120 Broadway
22nd Floor
New York, New York  10271