```
                                    ┌─────────────────────────────┐
                                    │ USDC SDNY                   │
                                    │ DOCUMENT                    │
                                    │ ELECTRONICALLY FILED        │
                                    │ DOC #:                      │
                                    │ DATE FILED: 7/10/12         │
                                    └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
DENNIS FARRELL,                     :
                                    :      07 Civ. 8073 (LAP) (HBP)
               Petitioner,          :
                                    :      ORDER ADOPTING REPORT &
     v.                             :      RECOMMENDATION ON HABEAS
                                    :      DENIAL
ROBERT ERCOLE,                      :
Superintendent,                     :
                                    :
               Respondent.          :
------------------------------X

LORETTA A. PRESKA, United States District Judge:

     Petitioner filed this Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 on August 10, 2007 and

filed an Amended Petition on October 16, 2008.  On December

8, 2011, Magistrate Judge Pitman issued an exhaustive

Report and Recommendation, concluding that Petitioner is

not entitled to habeas relief and that the action should be

dismissed with prejudice.  By Order dated January 11, 2011,

Petitioner received an extension of time to February 29,

2012 to submit objections.  Petitioner's objections and

supplemental objections were received on January 20 and

February 27, 2012, respectively.

     Upon review of Petitioner's objections, attached, and

finding Judge Pitman's decisions on timeliness, procedural

bars, and the merits to be correct and appropriate upon de

novo review, see Fed. R. Civ. P. 72(b), the Report and

1

Recommendation is hereby adopted.  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue pursuant to 28 U.S.C. § 2553.  Nor shall any certification pursuant to 28 U.S.C. § 1915(a)(3) be issued as any appeal from this decision would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:  June 25, 2012

_____
LORETTA A. PRESKA
Chief U.S. District Judge

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CIV. 8073
(LAP)(HBP)

DENNIS FARRELL,

PETITIONER,

-against-

ROBERT ERCOLE, SUPERINTENDENT

RESPONDENT,

OBJECTION(S) TO MAGISTRATE JUDGES
REPORT AND RECOMMENDATION

Dennis Farrell, 03A3346
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

       DENNIS FARRELL,

             PETITIONER,


      -against-                07 CIV. 8073 (LAP)(HBP)

ROBERT ERCOLE, SUPERINTENDENT
Green Haven Corr. Fac.
ANDREW M. CUOMO, ATTORNEY GENERAL
STATE OF NEW YORK; AND ROBERT
MORGENTHAU, District Attorney,
County of New York.

            RESPONDENT,

--------------------------------X


NEW YORK STATE    )
                 ) ss:
DUTCHESS COUNTY  )


## PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### 1. INTRODUCTION

On December 8th, 2011, Magistrate Judge Henry Pitman filed a Report & Recommendation ("RR") recommending that all of the claims in the Petitioners application for a writ of Habeas Corpus be denied.  The petitioner hereby objects to each and every recommendation contained in said "RR".

Claim #1

Objection to Magistrates Report & Recommendation

<u>Petitioners Claim Concerning His Identification</u>

Identification is the core issue of this case.

During trial, Mr. Virani victim/witness told the jury. He knew that the suspect was in custody, that he was mindful that the person was "over six feet tall" and "the defendant was the only person over six fee tall. (See Trial Transcripts, page 233, line 7; page 23, line 21 to page 234, line 6; and page 237, line 25 to page 240, line 7.)

Mr. Virani claimed that he had defendant come forward two times, (Trial Transcripts, page 242 line 24). That he was not given instructions to not speak with the other viewers of the lineup, (Trial Transcripts page 247, line 12); and counsel did not move for a re-opening of the suppression hearing upon this crucial testimony being unveiled in open court.

When Mr. Gani testified he said the perpetrator was in shape --a body builder; the man was light brown; the perpetrator was carrying a garbage bag and his pants was hanging down; and when asked does he see the person who did this to him in the courtroom he said no.(Trial Transcripts page 258, line 17-20; page 259, line 13-15; page 261 line 2-5; and page 265 line 19.)

When asked about the people in the lineup room, he stated that everyone was his height except one person, "<u>that's why he picked him because of his height</u>", (Trial Transcripts page 287, line 12 to page 288, line 5).

(2)

Learning this information defense counsel should have made a timely motion to reargue, (See People v. Ireland, 217 A.D. 2d 971, 630 NYS 2d 177), Counsel should have known that the ruling on a suppression motion is not final, and may be changed or revised at any time prior to final judgment. (See People v. James, 111 AD2d 254, 489 NYS 2d 527.)

After the holiday on January 21, 2003, Mr. Rao testified that the man that robbed him was fat, (Trial Transcripts page 372 line 12); age 35 plus or 40, (Trial Transcripts page 372 line 7) and that he told the police at the lineup: it looks like the guy although I have doubts. (Trial Transcripts page 378 line 19 to page 379 line 3).

Mr. Rao, just like the other victims stated, the police told him the guy was caught and he had to come identify him, (Trial Transcripts page 379 line 21 to page 380 line 2). Once again defense counsel refused to move to have the hearing re-opened. It could have easily been argued that the due process clauses of the State and Federal Constitutions forbid the use of unduly suggestive procedures during pre-trial identification, (U.S. v. Wade 388 U.S. 218); the eponym of the hearing is to determine the validity of pretrial identification, (See People v. Adams, 53 NY 2d 241, 440 NYS 2d 902; Stovall v. Denno 388 U.S. 293; Gilbert v. California, 388 U.S. 263; see also People v. Collins, 60 NY2d 214, 469 NYS 2d 65.)

( 3 )

The courts have stated that a major factor contributing to the high incidents of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to a witness pretrial identification, Id(quoting U.S. Wade, 388 U.S. 218, 288, 87 S.CT. 1926).  The "scholarly concern" and the "judicial remedies" that have been developed are fueled by the notorious inaccuracy of eyewitness identifications of suspects, (See, Johnson v. Ross, 955 F.2d 178, 180-181).  The Supreme Court has held that an identification procedure is suggestive where it "in effect says to the witness 'this is the man'"; (See Foster v. California, 394 U.S. 440, 88 S.Ct. 1127, and Biggers v. Tennessee, 390 U.S. 404, 407, 88 S.Ct. 979.)

The court has stated that identification evidence should be suppressed if the display was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. (See, U.S. v Jakobetz, 955 F2d 786, 803).

On many occasions during this trial the police officers continuously lied about the lineup and the people refused to correct their testimony even after hearing **"their witnesses testify to what is actually a tainted lineup"**.

Here, the defense attorney could have easily showns that the police were lying when they testified at the pre-trial hearing about not telling the witnesses that they caught the person.  Defense counsel also never informed the court that

(4)

the Private Investigator he hired never finished his inves-
tigation.

The People were so obsessed with convicting defendant with
this multi count indictment.  When they called their next witness
they proceded to allow him to perjure himself to discredit the
previous three witnesses testimony about the lineup that don't
know each other, (See, Trial Transcripts page 402, line 9)
The court (mind you) on cross examination took over questioning
the witness by asking did any person in the lineup stand or
approach the window, and he answered no, (Trial Transcripts
page 403 line 17-21).  The "court" then took the lineup report
and marked it People's #45 during cross examination without
**"anyone"** requesting it, (Trial transcripts page 410 line 18-
20).  Once again while trial counsel was cross-examining the
next witness (Det. Alfonso), the **court** once again took upon
itself and marked the detectives notes as **Peoples Exhibit #49,**
(Trial Transcripts page 433 line 15-23.)  When police officer
Fuchs was on cross examination the **court once again** interrupted
trial counsel and marked his notes #53 for the **People without
anyone requesting.**                          *New?*

**How much latitude is granted to the trial judge?** Because
I felt violated based on the intervention.  Trial Counsel once
again showed how ineffective he really was when he didn't object
to the intervention on the part of the judge.  A trial judge
eliciting of critical incriminating evidence posed grave risk
that he conveyed to the jury an **opinion** that defendant was cul-
pable and violated defendants Constitutional right to a fair
trial, which was not subject to harmless error analysis. (See

(5)

U.S.C.A. Constitutional Amendment 6; see also People v. Buckheit,
463 NYS2d 536.)

Identification was a facade. Petitioner first and foremost
was denied and deprived of showing the one distinguishing trait
he had (his bald head) when he was told that everyone would
be wearing painters hats. Then on top of all that, Petitioner
was bald, 6'1, and weighed 225 lbs. And was placed in lineup
with (4) fillers who were conveniently all 5'6. (Not even the
minimum height of the complaints which was 5'9). The fillers
all weighed between 140 to 160 lbs. A far cry from petitioners
225 lbs. (Please see Hearing transcripts 17-18).

As the courts know: A due process violation occurs when
the identification procedures were so impermissably suggestive
as to give rise to a very substantial liklihood of irreparable
misidentification. (Simmons v United States, 390 U.S. 377, at
384)  Thus the central question before the courts is whether
under the totalityof the circumstances the identification of
Defendant/Petitioner as the robber is reliable even though the
confrontation was suggestive. (Neil v. Biggers 409 U.S. 188,
199 (1972); Foster v. California, 394 U.S. 440, 442, 443 (1969);
see also People v. Burts, 78 NY 20 (1991). Before the courts
is the issue of the discrepancy of the fillers at Farrell's
(Petitioner) lineup was a major factor. To the extent THAT
all participants were made to sit down, except when everyone
was asked to walk to the window for Virani victim/witness could
get a better look; and Mr. Farrell was asked to walk up a second
timefor Mr. Virani. (See, e.g. McFadden v. Caban, 851 F.2d 784

(6)

(1988)(height and weight disparities were serious and unnecessary
); see also Raheem, 257 F3d at 134 (where one witness has empha-
sized a particular characteristic of the perpetrator in giving
a description to the police, a lineup in which only the defendant
has that characteristic may well taint the identification of
the defendant only by that viewer.)  See also People v. Chip
75 NY2d 336 (19) , and because a reasonable effort to memorize
the lineup is normally all that is required id; line-up[s] are
undduly suggestive as to a given defendant if he meets the des-
cription of the perpetrator previously given by the witness
and the other lineup participants obviously do not". Id.


    Whereas, In court identification tainted by prior suggestive
viewing was reason for trial counsel to once again **"object"**
to this without an independent source hearing. (See People v.
James, 67 NY2d 662, 664; see People v. Rahming, supra.)

    The ommission of the People's showing of victim/witnesses
testimony at the Wade/Huntley Hearing made it impossible for
the hearing court and trial court to determine whether an in-
court identification would have an independent value, (People
v. Bajraktari, 154 AD2d 542); its an error to find an independent
source exists when eyewitnesses did not testify at combined
Wade/Huntley Hearing, (People v. Ryan, 147 AD2d 508,509; also
see People v. Wong, 233 AD2d 568); since the eyewitnesses never
testified at the Wade Hearing, a de novo hearing should have
been held to determine whether or not witnesses had an indepen-
dent source for their in-court identification must be held **"prior**

(7)

to trial". See, People v. Cofield, 260 AD2d 395.

Consequently, the court should have held an independent source hearing to determine whether the eyewitnesses had an independent, untainted basis to permit them to make an in-court identification of the defendant. See Bouchereau, 255 AD2d 389.

It has been ruled that whenever there is a question of suggestive identification procedures employed, and identification thereafter presented at trial without an independent source hearing, there must be a fresh start, i.e. new trial proceeded by new Wade Hearing. See, People v. Havelka, 45 NY2d 636.

The defendants rights to due process includes the right not to be victimized by suggestive display that creates mis-identification.

As in People v. Riley, 70 NY2d 523, 530-531; 522 NYS2d 842, where two separate convictions were reversed because of the suggestiveness, the New York State Court of Appeals stated: "the importance of identification evidence is, of course, self evident. But then so too, are the weaknesses and dangers of improper identification evidence. The influence of improper suggestion upon identifying witnesses probably accounts for miscarriages of justice than any other factors combined. The complex psychological interplay and dependency of erroneously induced identification evidence via showups, lineups, various bolsterings and the like must be vigilantly guarded against because this error drives into the heart of the adjudicative guilt or innocence process affecting the person accused and

identified.   Thus, constitutional, statutory and decisional
safeguards have been erected essentially to insure reliability
of this most important evidence. (See People v. Riley, 70NY2d
523, 530-531; 522 NYS2d 842 (1987).

Its also interesting to note that: neither victim(s) testi-
fied at the Wade Hearing.   So looking at it from Petitioners
point of view and argument.   You have to wonder who is liable
or ineffective for not insuring that something so crucial would
be overlooked; and un-objected to.

Courts have also ruled that defense counsel is ineffective
for **"failing to object to the suggestiveness of the in-court
identification.** (See, Cossel v. Miller, 229 F3d 649); nor did
counsel move to suppress the unreliable identification. See,
Thomas v. Varner, 428 F3d 491.

It has also been ruled that if the State Court applies
a rule of law that contradicts a law set forth by the Supreme
Court, or if the State Court confronts a set of facts that is
materially indistinguishable from a decision of the Supreme
Court and reaches a result.   That decision is considered contrary
to clearly established law. See, Williams v. Taylor, 529 U.S.
362, 405-406, 120 S.Ct. 1495.

It has also been ruled that if a State Court decision
involves an unreasonable application of clearly established
Federal Law to the facts of the case in an objectively unreason-
able manner .  See, Brown v. Payton, 125 S.Ct. 1432, 1438-1439.

(9)

As we have seen throughout this argument/objection: Defense Counsel was not acting like counsel for the defendant when he failed to object and build a record to things that were said and entertained throughout the trial. And he gave defendant/petitioner a limited amount of defense, that looking back at the entire picture, was equal to no defense or record to revert to.

It is well established in New York State that a trial court need only reopen a hearing during trial where the defendant makes a showing that additional pertinent facts have been discovered with reasonablke diligence before the determination of the original suppression motion. See, People v. Hankins, 265 AD2d 572. (As in Defendant/Petitioners case and argument before the courts. Petitioner urged trial counsel to make the appropriate motion to reopen the Wade/Huntley Hearing based on the testimony rendered that contradicts; and is contrary to the perjured testimony that Judge Dorothy Cropper based her decision on. And this reverts back to the Wade Hearing itself when neither trial counsel or prosecutor elected to have the witnesses testify. And now the question of diligence comes into play. But the question is: The **fact finding process** relied upon on both sides is erroneous, and the record reflects this.) (Please see Exhibit "J" lineup photos; Wade/Huntley Hearing Decision; and trial testimony of Farid Virani and Ataul Gani that supports the suggestiveness of the lineup.)

The Due Process Clauses of the State and Federal Consti-tution forbid the use of unduly suggestive procedures during

(10)

pre-trial identification, (U.S. v. Wade, 388 U.S. 218).

28 U.S.C. §2254(d)(8)(2)(1) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court Proceedings. Namely: (Wade/Huntley Hearing perjured and erroneous testimony of the detectives.) Decision relied on such testimony. Cappiello v. Hoke, 698 F.Supp. 1042, Points 1 & 4 revolve around the adequacy or effectiveness of the State Proceeding; full & fair litigation.

### Supplemental Authority Supporting Petitioners Suggestive Lineup Claim.

In a decision dated August 25th, 2011, the Appellate Division First Department held in: People v. Kenley, 928 NYS2d 705 that defendants motion to suppress the lineup identification is granted "because" the lineup was "unduly suggestive" where the defendant weighed 400 pounds, was the only lineup participant who fit the witnesses description of perpetrator. Contrary to Mr. Kenley, Defendant/Petitioner has argued the same issue before the same department on his direct appeal to the Appellate Division First Departmen. And although Defendant didn't fare well, with his argument which is now before the District Court. And with this latest ruling, this only goes to show and further establish that the issueance of the **Great Writ** is proper in this case, because Petitioners conviction was obtained in violation of his well established rights to Due Process. For the record, petitioner would greatly appreciate the consideration due to this latest decision.

Petitioner has, and continues to argue the same issue as
People v. Kenley.  Because Petitioner was the "only" person
in the lineup that matched "key aspect(s) of the overall
description provided by (4) victim/witnesses who filed complaints
and later viewed the lineup.

**Height, Weight, and Age were all factors.**

**Overall, the perp was described as: Tall, Heavy, and between
the ages of 30 to 40ish.**  And although petitioner was bald and
clean shaven; every one of the robberies in question depicit
the perp as having various hair styles and color, as well as
facial hair.  And during the lineup, the one **distinguishing
trait & characteristic** that Petitioner had, was taken away when
we were all required to wear painters hats.

Suggestive Identification

All (4) of the fillers were conveniently and suggestively
5'6 in height.  While petitioner was 6'1 . (7 inches taller
then all of the fillers.)

Once again, all (4) of the fillers were conveniently and
suggestively between 140 to 160 lbs.  While petitioner was 225
lbs.  (85 lbs heavier then the lightest one; and 65 lbs heavier
the the heaviest one.)

As the record reflects .  The description of the robber
in these cases ranged from: 170 lbs to 250 lbs. (The fillers
used in the lineup didn't even meet the bare minimum of these
weights.)  The description of the height in all of these cases
varied from 5'9 to 6'2.  (Whereas, once again the fillers didn't
meet the bare minimum of the heights.)

Although its been alledged throughout the trial and pre-
trial hearings that the participants of this lineup were seated.
Such was not the case. (Please see trial transcripts of testimony
rendered by Farid Virani.)  Contrary to Mr. Kenley's size.
Defendant/Petitioner was a weight that could have very well
been found, if the desire to do so was given more emphasis.

As in People v. Aparico, 269 F3d 78.  Identification was
the core issue of this case and trial.  And although petitioner
would have much rather have had assistance of counsel in pre-
paring this objection to the Magistrates Report & Recommendation.

People v. Chipp is a high end case that supports petitioners
contention on suggestiveness.  (Const. Amendment 5, 14, Due
Process.)  BECAUSE – the substantial and overly suggestive like-
lihood that petitioner would be singled out for identification
is over-bearing in this case.  And the testimony rendered by
the victim/witnesses during trial "supports" petitioners
argument.

As in People v. Jackson, 750 NYS 2d 561, (N.Y. 2002) Point
#2.  Petitioner continues to point out & shoulder the burden
of establishing that the procedure used and relied upon was
unduly & overly suggestive.  And the states case based on testi-
mony rendered by various detectives was perjured, pre-meditated,
and underhanded with their own hidden agenda(s).

Fact Finding Process Integrity was not considered, nor
closely examined by the Magistrate.

(13)

Lisenba v. California
62 S. Ct. 280

The true essence of the above case is denial of "Due Process". Which entails the failure to observe, acknowledge, and adhere to the very concept of Justice.


And considering how much weight the court has given to what petitioner has pointed out thus far. Dowling v. U.S., 493 U.S. 342, 352 (1990) it is well established that the fundamental fairness gurantee of the "Due Process Clause" requires the prosecution to prove beyond a reasonable doubt, "every element of the offense" at 78)

Derden v. McNeel, 938 F2d 605 (5th Cir. 1991) states: It has been law for over 200 years that one error in a trial can violate a petitioner(s) Fourteenth Amendment right to Due Process. So cumulative-error analysis should be available to Habeas Petitioner(s) at 610, (Supported by citing Cupp v. Naughten).

Moore v. Parker, 425 F3d 250, 256, (6th Cir. 2005)
(discussing cumulative evidentiary errors)
* No matter how misguided this case law may be, it binds us.


Frank v. Magnum, 35 S. CT. 582, (1915)
The essential question before us is not the "guilt or innocence of the prisoner, but whether the State...has deprived him of Due Process of Law".

In the case at hand, petitioner, People v. Farrell, the futility and delay continues to be an obstacle in a Pro Se litigants way; can also be his failure & denial to meet certain constraints and obligations. Nonetheless, he trudges on. He has been ordered to resume the journey that seems so foreign to him; in the hopes of seeking the relief and review, by the same system that denied him the Due Process guranteed by the Constitutional Amendment.

All too often, I sit here measuring and comparing various case law that is applicable to my argument and issues. Yet, for some reason or another, MY ARGUMENT AND PRESENTATION NEVER SEEMS TO BE PERSUASIVE ENOUGH AS A LAYMEN OF THE LAW AND LAND.

However, I feel that if the courts were to grant me the assistance of a Federal or State Defender...Petitioner would stand a much better chance at achieving his ultimate goal.

Thus far, petitioner would like to believe that he has presented the courts with some questionable and viable issues with merit. And he is in dire need of effective assistance of counsel in the hopes of salvaging such with a successive petition. It appears at times that although I have a meritorious issue. I lack the ability to present such. And it continues to be an uphill battle...On an uneven playing field.

## INABILITY AND INCONSISTENCY

The case at hand reaps of "doubt". It has not been proven beyond a reasonable doubt; let alone has the prosecutor proven each and every element of the charges on the multi-count indict-

ment.  The proper arena, prior to this petition should have
been an "Evidentiary Hearing".

### 28 U.S.C.§2254 (d)(8)

Fact finding relied upon was proven to be clearly erroneous
when:  The "testimony" relied upon during the Wade/Huntley
Hearing was proven to be perjured once the victim(s)/witnesses
testified that everyone was "standing".  As opposed to the testi-
mony rendered and relied upon that Judge Dorothy Cropper based
her opinion/decision on.  (Please see attached exhibit for proof
and verification)

Decisions rendered during a pre-trial hearing or any other
proceeding are based upon "fact-finding" and testimony relied
upon.  And the investigation and representation by the attorney
or record.  The core issue of this case is "Identification".
And defendant/petitioners constitutional rights to effective
assistance of trial counsel was lost when testimony was rendered
that gave the entire case and decision relied upon a new face.
And he (trial counsel) never made the necessary motion to "reopen
the Wade/Huntley Hearing based on the testimony that contradicted
the testimony given by each and every detective that perjured
themselves.

Pre-trial hearings and trial testimony reflects the perjury
and facts relied upon.  And although Appellate Counsel was aware
of this slight & ineffectiveness of trial counsel.  He was also
ineffective for not raising this as one of the many issues and
arguments on direct appeal.  The issue at hand was handled too
mildly, and not enough emphasis was placed on an issue of this

(16)

magnitude.  But yet, once again defendant/petitioner was denied
the constitutional right to "adequate and essential appellate
representation.

    Appellant/Petitioner, prior to his Direct Appeal being
filed and submitted was called down on an Attorney Visit, for
a face to face with Appellate Counsel.  During this counsel
visit, Appellate Counsel felt the need to inform appellant that:
Although a hundred things went wrong during the course of his
trial.  He needed petitioner to understand and realize that
due to the (15) minutes he was alotted for "oral argument".
There was and is no way he would be able to cover all of this
proficiently.  So he elected to pick out the (6) most meritorious
issues that he felt he could cover in the amount of time awarded
and afforded to him.  He viewed the (6) issues as "steaks",
and the remainder of the issues as baked potatoes.  And although
petitioner understood some of what he was saying.  But, what
becomes of the remaining issues?  Its been said that if you
don't use them, you lose them.  And you are procedurally barred.
So petitioner has to wonder, what happened to Due Process?

    In closing, Petitioner intends to substantiate through
"exhibits attached hereto" the erroneous fact finding that this
case was based on.  It all ties into Identification/Suggestive
Lineup.  The "core issue" of this case hangs on that one string,
which petitioner hopes to cut.

    If the courts or Your Honor deems possible.  Petitioner
would like to have counsel assigned at this point in the hopes
of polishing up the issue at hand.  And I can only hope that

its not to late to incorporate the enclosed argument and docu-
ments with my pending Habeas Corpus Application.


Thank you in advance for whatever weight or consideration
that you may give to the argument and issue at hand.


As I've tried to point out in this application.  I'd like
this letter requesting permission to add a case that reaps of
supporting authority that has just been ruled on.  But at the
same time, I am asking Your Honor to view all of this under:

28 USCA Sec. §2254, State Custody; Remedies in Federal Courts


(A) The claim relies on--
(ii) a factual predicate that could not have been previously
discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to estab-
lish by clear and convincing evidence that but for the consti-
tutional error, no reasonable "fact-finder" would have found
the applicant guilty of the underlying offense.
(f) If the applicant challenges the sufficiency of the evidence
adduced in such State court proceeding to support the state
court's determination of a factual issue made therein, the appli-
cant, if able, shall produce that part of the record pertinent
to a determination of the sufficiency of the evidence to support
such determination.  If the applicant, because of indigency
or other reasons is unable to produce such part of the record,
then the State shall produce such part of the record, and the

Federal court shall direct the State to do so by order directed to an appropriate State official.  If the State can not provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State courts factual determination.

Looking back at the Magistrates Report & Recommendation on page #45.  He states that: **Any height difference was minimized because all of the defendants were (key word) "initially seated".**

**Contrary to what the Magistrate states.  Petitioner has exhausted this claim in the state courts on: Direct Appeal to the Appellate Division First Department; Error Coram Nobis; and in 440.10 Motion.**

Its mind boggling to see that the Magistrate in one breath tells Petitioner that he wasn't entitled to have the Wade Hearing reopened based on the testimony rendered; and that trial counsel was not deficient for not making the motion. (Page #67)  Then on page #47 the Magistrate states that: In order to exhaust his claim that trial testimony demonstrated the suggestiveness of the lineups, petitioner was required to first present this argument to the **Trial Court** (which we already know that Trial Counsel did not do) by moving to reopen the suppression hearing and offering the testimony there.  (Exactly what petitioner has pointed out in regardsto trial counsel being deficient in his performance, as well as ineffective in his representation of petitioners issues and arguments.)

## Claim 2
### Objection to Magistrates Report & Recommendation
### Petitioners Free Exercise Claim

As stated in Haines v. Kerner, 92 S.Ct. 594, a Pro Se litigants papers are to be read with appropriate benevolence, "however inartfully they are pleaded". Allegations of pro se complaints are held to less stringent standards then formal pleadings drafted by lawyer.

As the courts are well aware of. **Due Process** has long been a door opener in the **Constitutional Arena.** But even when established, the battle continues to be uphill on an uneven playing field for indigent pro se litigants who all too often don't have the power of **persuasion** when it comes to court-room lingo; or brief writing, and citing supportive case law.

Petitioner prior to trial; and during the course of trial, had encountered several obstacles in regards to "**observing the Sabbath**". Such where he asked his Rabbi, (Rabbi Sachs) to contact the trial judge (Budd Goodman). Thus far, everyone has focused on the fact that this was a "**request being made for the first time**" during jury deliberations. And such is not the case. **(please see Trial transcripts of January 17th, 2003, pages 200-201.)**

Prior to Judge Goodman giving his Charge, petitioner asked trial counsel to make a motion to wrap things up for the weekend so he would have ben able to catch the early bus/departure to Rikers Island. But for reasons unbeknownst to petitioner, he didn't make the motion until "after the Charge". Once again,

(2)

Due to the time constraints Petitioner is faced with.
Aside from the ongoing argument that the sentence he was given.
He (petitioner) continues to assert that the enhancement of
his sentence has to be illegal and excessive. And as the record
will reflect, on the first day, prior to the first jury pool
being chosen. Petitioner was the subject of Judge Goodman(s)
wrath when petitioner chose not to take the 20 to life sentence
that the District Attorneys Office was offering. Whereas Judge
Goodman literally "promised" petitioner that if he lost trial
to the (10) count indictment. He would be sentencing Petitioner
to "250 to Life". Not only did he display **anger & emotions.**
**But the power and abuse afforded to him to make a threat such**
**as this, has to be immoral and illegal.**

And when Petitioner was finally sentenced. Low and behold,
the trial judge (Budd Goodman) had a mouthful to say, prior
to his sentencing Petitioner to not only an excessive amount
of time; but also a **death sentence two times over.** And if this
display wasn't a travesty of justice; and abuse of authority.
Then shame on me. The court in Apprendi has held that any **fact**
**that increases a sentence after a trial by jury; must be decided**
**by the jury as well.** And until the New York State statutes
change, petitioner can only hope to preserve this unjust argument
and abuse of power afforded to judges, that can make threats
prior to trial; if you don't see fit to take what is on the
table. And then turn around and sentence you just like he pro-
mised he would, without ever hearing the mitigating circumstances
of the case.

( 3 )

This court has the broad power to modify a sentence that is unduly severe. **See People v. Delgado, 80 NY2d 780 (1992).** If the interest of justice warrants, the review power may be exercised without deference to the sentencing court.

As the courts can see, the sentence imposed was done in such a manner, that the gravity of the offense didn't have a need to consider the **"rehabilitative needs or any chance of life thereafter.** So its safe to say that during the rage filled encore of Judge Goodman, petitioner was sentenced and destined to die in jail without actually having a **death penalty** in New York State.

And with a bias judge such as this, the court has to wonder what his anger was guided by. When sentencing Petitioner to a 125 years to life; which only gives the judicial system the appearnace of being unrealistic and demeaning manner.

Please see the **colloquy** that transpired between Judge Good-man and Petitioner prior to the start of trialwen petitioner showed no interest in the offer that was on the table from the prosecutors offer. This will support petitioners claims of trial judges rage and anger that provoked the sentence that was eventually given to petitioner, in the absence of a jury of his peers as he elected to go to trial in front of.

Petitioner can only pray that the court will see fit to address the illegality of the death sentence he was dealt.

Claim #3

## Objection to Magistrates Report & Recommendation
### Petitioner's Pre-Voir Dire Instruction Claim

Petitioner continues to preserve and assert that it was wrong for the courts to give the **"prospective jurors"** an in depth explanation of the **elements of robbery**, creating the possibility of **premature deliberations, and somewhat of a "cheat sheet".**

And its been strongly discouraged through previous situations that this affects the mode of proceedings proscribed by law. And reversal is demanded even in the absence of objection. Thus, this case demands reversal. U.S. Const. amend. XIV; N.Y. Const. art. I, §6.

The Magistrate states that this claim is procedurally barred because trial counsel failed to object. But as the courts have stated in People v. Davis, 12 A.D. 3d 456, 457 (Ad Dept. 2004), the Appellate Division reversed a conviction for the same thing . (Please see, People v. Farrell Appellate Brief at page 34 for more in depth insight.)

To sum it up, without dwelling on an issue that has been explained at length before the courts. The court created piece-meal, and premature analysis of the evidence. Petitioner in need of preserving his argument. And in turn refers the court to Point IV in his Direct Appeal to the Appellate Division, (People v. Farrell) from page 33 thru 37. And in doing so

Petitioner prays that the District Court will not view this issue as unpreserved.  Especially when the state procedural bar is erroneous in so far as the Fact Finding is concerned; and presents a question of Federal Law for review.  And afford the Petitioner the right to an evidentiary hearing so the courts can view and examine the "big picture" and award Petitioner the reversal sought as an end result.

Claim #4 Petitioners Objections to
Right to Present a Defense supported
by the record & testimony.


In crossing the bridge of "fair play" in the Magistrates
Report & Recommendation. He gets side tracked and takes us
on a journey, that touches on everything but the issue at hand.
which is: The inability of trial counsel to request the charge
that Petitioners Defense revolved around.

Once again defendant/petitioner asks the court to please
look at the issue and reason before the court. Petitioner was
stopped at a light. An unmarked car pulled up alongside him,
with guns pointing at him, demanding that he pull over. Keep
in mind, Petitioner was coming back/returning from a club in
Brooklyn. After a night of drinking and drugging when all of
this transpired. Out of fear of the unknown. Petitioner stepped
on the gas in order to get out of harms way. Petitioners sole
intent was to get away. had petitioner "known" that he was
being chased by police officers. I think its fair to say that
if I (Petitioner) knowingly possessed a firearm (as alledged)
there was ample amount of time to throw this out the window.
(food for thought). And taking it a step further, had I (known)
it was the police chasing me. I'd like to believe I would have
been wise enough to take my money; identification; and my regis-
tered cell phone with me. In the interim of this approach and
chase. The last thing I wanted to do was hit anyone. There
was "no intent or malice preconceived" to hurt anyone. And

( 2 )

such an attitude would have defeated my intent and purpose.
At the last minute, defendant/petitioner made an attempt to
stop. The prosecutor preys on the fact that I can't describe
or point out the people responsible for the approach. And
Petitioner is the first one to admit that he wasn't thinking
or functioning right, under the influence of drug(s) (heroin
& cocaine), and alcohol and fear. No intent was meant to hurt
anyone. Getting out of harms way was my intent and goal. And
I can't say it any better then the **Magistrate** did in his **Report
& Recommendation**, where he asserts that petitioners testimony
of what happened went **uncontroverted**. So as we speak, the prose-
cutors office has never made a **showing** that this didn't happen.

Petitioner took the stand, and put himself at the mercy
of the court when he told what really transpired on that early
December morning in 2001, on a wet and cold day. I prompted
my attorney to let me take the stand. Because had I not. It
would have never been part of the record before us. However,
as of this writing, nobody has ever taken accountability for
the chase in question. Nobody wanted to be subjected to the
end results of the **"accountability" and approach that created
this situation.**

The Magistrate refers to Blazic v. Henderson, supra, 900
F2d at 540, where it states: A court is not required to adopt
an artificial or irrational view of the evidence in deciding
whether a justification charge is warranted.

Petitioner was stripped of his defense, when the trial
judge refused to charge the jury on **Duress and Justification.**

And due to trial counsels inability to fully articulate
the requested charge, this was ineffective assistance of trial
counsel. (See, Strickland v. Washington, 446 U.S. 66(1984);
People v. Baldi, 54 NY2d 137 (1981).

Once again: Fair trial in a fair tribunal is a basic
requirement of Due Process. - See In Re Munchinson, 349 U.S.
133, 136 (1955).

Having deprived defendant/petitioner of a fair trial, the
error can not be considered harmless. People v. Townsend, 67
NY2d at 817. Whether the testimony rendered by petitioner for
his actions were "artificial or irrational". Thats a question
that should have been left in the hands of the jury...Not the
judge.

The Magistrate gives us a mixed version of events. And
looking at the journey he took us on, to justify the courts
denial of the charge. Petitioner now comes to realize that
maybe he should have been granted an "Intoxification Charge"
as well. There was no **foundation** for trial judges denial of
the charge of duress, other then the fact that trial counsels
inability to fully articulate himself & object to this, denied
petitioner the assistance that he needed.

But once again, a State procedural bar, in terms of its
adequacy, is itself a Federal question. Lee v. Kemma, 534 U.S.
362, 122 S. Ct. 877; Cotto v. Herbert, 331 F3d 217. And peti-
tioner prays that your honor will give this issue the funda-
mental fairness that was denied petitioner at trial.

Magistrates Report & Recommendation deviates from the issue at hand. We have a chase, that was prompted by the "approach used". At no time, did this unmarked car "identify themselves". So, the question that the court should be considering is: What spooked or instilled the fear in Petitioner that made him take off? Something happened that the department isn't telling; and thats why the issue went uncontroverted at trial, and again in the AAG's response. The Magistrate takes us on an excursion that has nothing to do with the actual chase. The question before the court is "what happened"? "Why did it happen"? And what prompted the petitioner to take off like he did?

Defendant/Petitioner never once relied upon the fact that he was under the influence of alcohol, heroin, and cocaine. And for Judge Goodman to deny petitioner the proper charge to the defense he had. Petitioner was denied the equal protection of the Constitutional Amendment that gurantees him Due Process, and an attorney whose inability to articulate himself, denied petitioner effective assistance of counsel.

The trial by jury that defendant/petitioner elected to have, was denied when the jurors weren't afforded the chance to use the reasonable person standard to assess whether the defendant feared imminent physical force, after the testimony and defense that he put before the court and jury. See, People v. Jenkins, 214 AD2d 584, 585 (2nd Dept. 1995).

To sustain a Duress defense, the defendant needs to show that he feared the risk of physical force. See, People v. Pryor, 70 AD2d 805, 806 (1st Dept. 1979)

Appellant/Defendant/Petitioner had the right to presnt his defense, and for that defense to be supported by the court's instructions.  The right to present a defense, while not specifically enshrined in the Federal and State Constitutions, is considered an aspect of fundamental fairness and due process. California v. Trombetta, 467 U.S. 479, 485 (1984); Chambers v. Mississippi, 410 U.S. 284, 295 (1973); People v. Primo, 96 NY2d 351 (2001).  While this right is not absolute, "its denial or significant diminution calls into question the ultimate integrity of the fact-finding process and requires that the competing interests be closely examined. Chambers v. Mississippi, 410 U.S. at 295 (citations omitted).

Appellant preserved his claim for appellate review. C.P.L. §470.05(2).  And any failure of counsel to fully articulate the requested charge was "ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984); People v. Baldi, 54 N.Y. 2d 137 (1981).  Certainly the court was obligated to provide some instruction regarding the defense, rather then just to dismiss it.  Stripped of his defense, the charge as a whole was wrong, and thus the error cannot be considered harmless.

A retrial would be distorted absent consideration of all the counts.  People v. Pauli, 130 A.D. 2d 389 (1st Dept.), appeal dismissed 70 N.Y. 2d 911 (1987).

Accordingly, this court should reverse and order a new trial, where the court tells the "jury" that they may consider appellant's defense.

Claim # 5, Petitioners Objection(s) to
Magistrates Report & Recommendation
of Apprendi Claim


The Petitioner asserts and relies up the ruling of Apprendi
v. New Jersey, 530 U.S. 466 (2000).

Petitioner relies upon the above mentioned decision.
Because absent the twofold decision whereas any enhancement
in Petitoners sentence, without presenting it to the **jury** that
rendered his guilt. Needs to be addressed and resolved by a
jury of his peers. Apprendi v. New Jersey, supra, 530 U.S.
at 490.

**Prior to trial:** Petitioner, (on the record) before the
first jury panel came in, was verbally insured that: (before
the case was heard mind-you) Should defendnat/petitioner elect
to go to trial in his (Judge Goodman) courtroom; and if he loses
to the (10) ct. indictment. He **"promised"** petitioner. That
he would be sentencing him to **250 to life.** Petitioner, feeling
coerced and violated with this threat from the **"trial judge"**,
who is supposed to be impartial & somewhat of a referee. Let
his emotions and anger at being threatened tell his lawyer,
lets get on with the trial. And from that point on, Defendant
was fighting for his life in front of a jury, judge, and a prose-
cutor. (And looking back at the big picture. Petitioner has
all too often believed that his trial attorney was a **"ringer".**)

Because a record of two sequential violent felony convic-
tions is, thus, a condition precedent for the imposition of

( 2 )

Due to the time constraints Petitioner is faced with.
Aside from the ongoing argument that the sentence he was given.
He (petitioner) continues to assert that the enhancement of
his sentence has to be illegal and excessive.  And as the record
will reflect, on the first day, prior to the first jury pool
being chosen.  Petitioner was the subject of Judge Goodman(s)
wrath when petitioner chose not to take the 20 to life sentence
that the District Attorneys Office was offering.  Whereas Judge
Goodman literally **"promised"** petitioner that if he lost trial
to the (10) count indictment.  He would be sentencing Petitioner
to **"250 to Life"**.  Not only did he display **anger & emotions.**
**But the power and abuse afforded to him to make a threat such**
**as this, has to be immoral and illegal.**

And when Petitioner was finally sentenced.  Low and behold,
the trial judge (Budd Goodman) had a mouthful to say, prior
to his sentencing Petitioner to not only an excessive amount
of time; but also a **death sentence two times over.**  And if this
display wasn't a travesty of justice; and abuse of authority.
Then shame on me.  The court in Apprendi has held that any **fact**
**that increases a sentence after a trial by jury; must be decided**
**by the jury as well.**  And until the New York State statutes
change, petitioner can only hope to preserve this unjust argument
and abuse of power afforded to judges, that can make threats
prior to trial; if you don't see fit to take what is on the
table.  And then turn around and sentence you just like he pro-
mised he would, without ever hearing the mitigating circumstances
of the case.

(3)

This court has the broad power to modify a sentence that is unduly severe. **See People v. Delgado, 80 NY2d 780 (1992).** If the interest of justice warrants, the review power may be exercised without deference to the sentencing court.

As the courts can see, the sentence imposed was done in such a manner, that the gravity of the offense didn't have a need to consider the **"rehabilitative needs or any chance of life thereafter.** So its safe to say that during the rage filled encore of Judge Goodman, petitioner was sentenced and destined to die in jail without actually having a **death penalty in New York** State.

And with a bias judge such as this, the court has to wonder what his anger was guided by. When sentencing Petitioner to a 125 years to life; which only gives the judicial system the appearnace of being unrealistic and demeaning manner.

Please see the **colloquy** that transpired between Judge Good- man and Petitioner prior to the start of trialwen petitioner showed no interest in the offer that was on the table from the prosecutors offer. This will support petitioners claims of trial judges rage and anger that provoked the sentence that was eventually given to petitioner, in the absence of a jury of his peers as he elected to go to trial in front of.

Petitioner can only pray that the court will see fit to address the illegality of the death sentence he was dealt.

## Claim #6
### Objection to Magistrates Report & Recommendation
### Petitioner's Brady Claim

_____In regards to petitioners **Brady Claim,** he brings to light the deceitful and malicious withholding of **exculpatory reports and documents,** that would have given petitioners trial and defense a different look.  It is well settled that no man makes fictitious entries and commits forgeries except to conceal that which he knows ought to be concealed for his own credit; therefore, no one can doubt for a moment.  The Courts have stated in the past that a resort to the suppression or fabrication of evidence indicates not a seeking after justice, but an effort to poison the stream of justice.  The reaction is poison to the cause of him who seeks to use it. (**See, Garippa v. Wisotsky,** ████████████) 108 NYS2d 67)

The prosecution is obligated to correct mis-statements of the witnesses regarding a witnesses testimony; if such mis-statements are not corrected, and are in any way relevant to the case, the verdict of guilt will not stand. (See, People v. Schwartz, 240 AD2d 600, 659 NYS2d 51)

Petitioner asserts that, the (2) Brady Claims; and (2) Brady Documents presented in his **Habeas Application/Petition** were prevalent to petitioners defense and innocence.  And after numerous F.O.I.L. Request defendant/petitioner unveiled what should have been given to him at the beginning of his trial along with the rest of the **Rosario Material.**

( 2 )

Petitioner continues to assert that through a series of F.O.I.L. request(s), he has unveiled a multitude of documents that weren't part of the Rosario Material **disclosed prior to trial.  Whereas, some of the documents are now viewed as** Brady **by the nature of the denial.**

And, as the court may well know: The prosecution is obligated to crrect mis-statements of the witnesses regarding a witnesses testimony; if such mis-statements are not corrected, and are in any way relevant to the case, the verdict of guilt will not stand. (See, **People v. Schwartz**, 240 AD2d 600, 659 NYS2d 51).

This rule as well as the rule forbiding the prosecutor from making use of testimony known to be false, is based on underlying principle which has been expressed as follows in **Berger v. U.S.**, 295 U.S. 78, 88, 55 S.Ct. 629, 633.

The issue of perjury extends to the Grand Jury as well. In making a presentment to the Grand Jury, the prosecution has wide discretion, but this discretion is not unbounded.  For instance, the prosecution has a duty not to let the case go to trial when he knows the Indictment is founded on perjury; and if he/she is in possession of evidence which clearly negates Defendant's guilt, he/she MUST submit such evidence to the Grand Jury. (See, **People v. Perez**, 105 Misc. 2d 845, 433 NYS2d 541).

In the case before the courts, there are (2) Brady issues/ violations.  Only one of them are referred to by the Magistrate in his Report.  First Petitioner would like to direct the courts attention to a report that petitioner reaped to a F.O.I.L. request with One Police Plaza.  This report is referred to as a "Complaint Follow Up" or "DD5".

Petitioner has always alledged that the "Confessions to a multitude of Robberies".  That he is alledged to have given, were the product a stationhouse beating and choking.  Whereas defendant/petitioner was beat up and choked, and convinced and coerced into "signing" what was already written; out of fear of more physical abuse to come.

At defendant/petitioners Wade/Huntley Hearing, all (11) of these robberies/confessions were read into the record in order to have the courts allow them in.  Although only (4) of the robberies/confessions were being used.  All (11) were used and read into the record.

Petitioner in his Omnibus Motion, specifically requested a laundry list of information so that he could prepare an adequate defense to the outlandish list of charges being considered against him.  And in doing so, petitioner(s) request entailed under: A.

### COMPLAINT AND DESCRIPTION

(5)  State whether any person other than Defendant was ever taken into custody as a possible suspect in this case.
             If so, provide:

 (a)  The names, addresses, and birthdates of all such per-sons.

( 4 )

   (b)   The time, date, location and manner in which such

           persons were taken into custody, and by whom.

  (c)   Whether such persons were viewed in any manner

         by any witness or potential witness for the

       People, and whether or not such persons were

           identified by any witness.

      (d)   The dispositions of such cases.

And when the court looks at the Peoples response to Defen-
dants "Motion for Pretrial Discovery".  The response to this
request is "No one else has been arrested for the series of
robberies the defendant committed; And no one has identified
anyone other then defendant as the perpetrator of these crimes.

In Petitioners search for the truth, and a chance to unravel
what wasn't disclosed to him.  Petitioner continued his search
for the truth, and the untold story.  This entailed more F.O.I.L.
Request, through different approaches.  When looking back at
the Rosario Listing, petitioner in reviewing the (11) confessions
that the prosecutor seen fit to give us; I wanted to find out
what the overall identifications & descriptions of all the perps
were with the other robberies.  So I started with F.O.I.L.
Request for all the DD5'S that I didn't already have; such as,
but not limited to: DD5's, Investigation Reports, Complaint
Reports, Police Reports & Descriptions, and any other Reports
that might unveil some type of pattern.

And after many sleepless nights, months, and years, it
all started to come together.  And through hindsight, I can
now see "why" I went through such trials and tribulations to

(5)

obtain what I now present to the court.

Petitioner reaped through his F.O.I.L. Request(s), from
One Police Plaza, (51) pages of requested documents, at ¢.25
per page.  One of the documents originally requested was denied,
but somehow, inadvertently sent a document that was "un-redacted"
which made petitioner know that this was a mistake.  But never-
theless, a "fruitful" one, which was a detailed report by the
**Police Department of the City of New York.  To: The Chief of
Department.**

The report in question is a **"version"** of what really tran-
spired on the morning of: December 7th, 2001.  It gives peti-
tioner a chance to see that his **Constitutional Rights to Due
Process** were indeed trampled and hindered through malicious
and intentional deception on the part of the District Attorneys
Office.

First and foremost, the information within the: **Police
Department City Of New York** contains information not available
during trial or the Grand Jury; Interviews that were conducted
of witnesses and police personnel involved in the chase; along
with Departmental Depositions with Counsel of the incident &
chase that occurred.  And recorded on audio-cassette that was
never turned over to defense.

Its been alledged throughout Pre-Trial Hearings, as well
as trial, that when petitioner was discharged from the hospital
and taken back to the police station.  He was fine.  But the
report before the courts as subject:  Specifically states from

within that: Mr. Farrell was not interviewed, due to his medical
condition, by the 19th Precinct Detective Squad. (The same
department that stated when it was advantageous to there hidden
agenda, that petitioner was fine.)  Mr. Farrell was currently
being treated when the narrator reported for a **"fractured skull;
broken ribs; and contusions and lacerations to his head and
forehead.**

As of this writing, petitioner has yet to have been privy
to what is on the statements that were recorded on audio-cassette
on file.  Looking at the report beofe me, petitioner can clearly
see that there are versions within this report that weren't
divulged to the Grand Jury, nor the Defense.  And had the report
before the court been available during trial, it would have
shed new light on the defense theory; and impeached alot of
witnesses and trial testimony that went unaddressed.

Such as, but not limited to:  #7 NARRATIVE, where it speci-
fically states: At no time did they use there siren or bubble
during there pursuit; and both Lt.Dheedene and P.O. Olson did
not know whether the "occupant(s)" of the suspect vehicle were
aware that they were aware that they were being followed by
a Department vehicle.  (At no time during the trial, or before
the Grand Jury, was it ever known or testified to that they
observed more then one person in the car that they were in pur-
suit of.)

And who is to say what other "conflicting observations
and accusations" were made during this interview or the others
of witnesses directly entwined with this case and investigation.

Please see Exhibits "A through D" for a much closer look
at the way the District Attorneys Office defied and denied that
these reports existed.  Petitioner went through the entire pro-
cess of an Article 78 Proceedings in order to "compel" the
District Attorneys Office to turn over the reports.  And even
then ADA Maureen T. O'Connor submitted a **"sworn affidavit"**
Exhibit "D" stating that none of the documents sought existed
in file.  (With no fears of reprisals or sanctions.  Petitioner
has had nothing but an uphill battle trying to obtain what should
have been turned over to him during his trial; to exculpate
defendant; and support his defense and theory.

What Petitioner has tried to point out through the DD5
Complaint Report is.  Had the petitioner known that there was
another person **"already arrested & in custody"**, for one of the
**crimes he was alledged to have given a confession to.  He would
have subpoenaed the perp to prove and establish his theory and
defense that: A.) He never gave or told those confessions that
he was physically choked and beat up to sign.  B.) To show that
the Detectives were on a fishing expedition to clean up the
books of all the unsolved Robberies within the 19th Precinct.**

The mere fact that one perp was let go, in lieu of yet
another in there sights, gives good cause to the courts to enter-
tain that the report in question does have relevancy.  And that
in itself should have been something for the jury to weigh and
consider.  And Petitioner prays that through further obser-
vation, the court will see the significance behind the denial
of these two documents/reports.  It was a question for the jury

(8)

Case(s) that support Petitioners overall arguments about
the documents not afforded to defense at the start of the trial
are; People v. Steadman, 82 NY2d 1, 603 NYS2d 382; see, People
v. Unroch, 64 NY2d 905; Napue v. Illinois, 360 U.S. 264; People
v. Gealson, 54 NY2d 510, 446 NYS2d 227.

Looking back at how hard petitioner has fought and delved
to come up with the issues that revolve around the denial of
Due Process.  I have to wonder whether the People ever had any
intention of complying with the Constitutional Law of New York
and Federal guidelines & obligations.  And this was demonstrated
in their response to defendants Omnibus Motion on their page
2, 5th paragraph, when they claimed that police reports are
not discoverable at this time citing C.P.L. §240.44 (1), and
240.45(1)(2).  These two sections deal with Grand Jury Witnesses
and tape recorded or written statements.

There was a clear request to know if anyone else was
arrested for these crimes.  And the people clearly claimed that
no one e;lse was arrested for these crimes.  Clearly the people
were lying, based on the document before the court.  The people
knew after reviewing this there was a serious problem with the
confession that the police claimed the defendant gave, but tried
to hide this.  The police do not prosecute criminal defendant(s),
The people do.  There is "no plausible excuse" why they didn't
have the arrest records for a crime in the same precinct, along
with the police memo notes.

The New York State Court of Appeals, the People must dis-
close to defense evidence in its possession that is favorable

(9)

to accused.  A prosecutor's duty to disclose favorable defense
evidence is not lessened simply because material in question
may affect only credibility of government witnesses, "(See People
v. Steadman, 82 NY2d 1, 603 NYS2d 382)".

Under New York Law C.P.L. §240.45(1)(a) states that, after
a jury has been sworn and before the prosecutor's opening address
the prosecutor shall, subject to a protective order, make avail-
able to the defendant: (a) Any written or recorded statement
made by a person whom the prosecutor intended to call as a wit-
ness at trial, and which relates to the subject matter of the
witness's testimony.  The **prosecutor failed** to turn over the
recorded statements of police officers, and witnesses, therefore,
there was a violation under People v. Rosario, 9 N.Y.2d 286.

Under the Brady doctrine the duty to disclose to the defen-
dant extends to impeachment evidence as well as exculpatory
evidence, and the courts have ruled that Brady suppression occurs
when the government fails to turn over even evidence that is
known only to police investigators and not the prosecutor (**see
Youngblood v. Virginia, 126 S.Ct. 2188, 2190; Brady v. Maryland,
373 U.S. 83, 83 S.Ct. 1194; Kyles v. Whitely, supra; see also,
DiSimone v. Phillips, 461 F.3d 181 (2d Cir. 2006).**

It should also be noted that under People v. Vilardi, 76
N.Y.2d 67, the standard to be used to determine whether or not
a defendant is entitled to a new trial based upon the prose-
cutor's failure to disclose exculpatory material, which has
been requested, is a reasonable possibility that failure to

(10)

disclose the exculpatory evidence contributed to the verdict.
Failure to turn over certain prior statements is not immune
to harmless error, (See People v. Ranghelle, 69 N.Y. 2d 55,
511 N.Y.S. 2d 580).

As the courts may have already noticed through the series
of motions and appeals that Petitioner has submitted. Petitioner
all too often relies upon in-house (Jailhouse Lawyer) help in
typing and accessing certain materials. And the Brady Claim(s)
before this court were twisted & distorted. But Petitioner
has made an attemopt to make heads or tails of such in his objec-
tions "on his own". Something I promise to do more often now
that I see what happens when I rush and depend on others.
Petitioner may be redundant & long winded with his opinion or
version. BUT, its safer.

As in U.S. v. Agurs, 510 F2d 1249, it clearly states that:
Prosecutors deliberate failure to supply defense counsel with
information that tends to exculpate accused constitutes prose-
cutorial misconduct meriting reversal of conviction. Nondis-
closure of evidence that would have been central importance
to defense had it been available will void conviction even though
prosecution may have acted in good faith, or defense counsel
may have failed in his duty of diligence. No clear consensus
exists among the courts on the question of whether in the absence
of prosecutorial misconduct, a defense request is necessary
to trigger the prosecution's duty to reveal possibly exculpatory
information in its possession.

(11)

Although the Magistrate in his decision continues to claim
that the **document unveiling** yet another **"perp"** being arrested
for one of the **many robberies petitioner is alledged to have
given a confession to,** is not applicable to the case(s) peti-
tioner was tried for. **Such is not true.** BECAUSE, petitioners
entire case/defense revolves around **mistaken identity.** So having
yet another **perp,** being mistakenly arrested and identified as
the man that robbed yet another proprietor is **"proof"** and
substantial **evidence/proof** that there is truth to the **fishing
expedition** that the department went on to clean up and resolve
all of the **unsolved robberies** in the precinct.

The document/complaint/arrest report before the courts
is **substantial evidence** that supports my defense of innocence
and mistaken identity. The **Magistrate** in his report and recomm-
endation claims that the document in question has no bearing
on the case(s) before the court. But **Petitioner** begs to differ
because: During the Wade/Huntley Hearing. The Prosecutor used
and relied upon this very **"confession"** in the hopes of getting
all of them in to use during the course of the trial. And once
the **Prosecutor** took the initiative of doing this, they were
obligated to run over anything/everything that could have proven
petitioners theory and defense.

See, People v. Schwartz, 240 AD2d 600, 659 NYS2d 51, where
it states: The prosecution is obligated to turn over any and
all proof that is in any way relevant to the case, that is rele-
vant to the verdict or guilt.

The Courts have stated in the past that: a resort to the suppression or fabrication of evidence indicates not a seeking after justice, but an effort to poison the stream of justice. (See, Garippa v. Wisotsky, 108 NYS2d 67.)

### Proof of Knowledge & Culpability

Petitioner filed an Article 78 seeking documents with-held and denied in F.O.I.L. Request. After a little over a year, ADA Maureen T. O'Connor gave a Sworn Affidavit that the reports being sought did not exist. (See Exhibit-D for confirmation).

When petitioner filed his 440.10 Motion, after verifying that the ADA was lying and misleading the courts. The ADA alledged in fron of this judge, that the documents in question were turned over to trial attorney prior to the start of trial. The Rosario Listing not the trial record have any proof of such exchange ever transpiring. Now, years later, petitioner has received a copy of the report sought. But an entirely different report sent to petitioner from the F.O.I.L. Department along with a receipt for $3.00. (A real cover-up) but a far cry from the document that petitioner brings before the courts as Exhibit A in his application.

### Knowledge & Culpability

The District Attorneys Office realizing that petitioner had unveiled Brady/Rosario Material made an attempt to cover-up the lies and perjured affidavits they brought before the courts. Exhibit A clearly shows & depicts "statements" made that were with-held from the Grand Jury as well as petitioner during his trial. And the statements recorded were never turned

over to this day as part of the **discovery** that was sought by

attorney of record.  (The file that trial counsel never received

upon taking over petitioners case.)

Petitioner is in dire need of an evidentiary hearing in

order to prove the significance of these documents, had they

been available to him and trial counsel, in preparing his defense

and witnesses.  (Statements & witnesses that were not known

about prior to trial; that could have proven and painted a

different picture, in support of his defense.)

Please see attached hereto, the document sent to me years

later; as opposed to the one Petitioner discovered through his

F.O.I.L. Request.  "This report does not depict the fact that

<u>statements were taken; nor the lengthy narrative of what really</u>

<u>transpired on December 7th, 2001, or the recorded statements</u>

<u>that were with-held from petitioner & trial attorney.</u>  Exhibit

<u>A is the true and complete story, as opposed to the one that</u>

<u>has now been released.</u>  Petitioner preys that your honor will

look at the difference in the reports.  The report before the

courts now was alledged to have been transcribed on December

12th, 2001; as opposed to the one Petitioner introduces to the

courts that was transcribed on December 7th, 2001.  (A report

that I'm sure Petitioner was not suppose to obtain, due to the

fact that it wasn't down-sized "such as the one thats before

the courts now"; and it was never redacted.  But yet the Magis-

trate feels that this isn't worthy of being viewed as Brady

Material.  The essence of this report is pertinent to Petitioners

defense.  A hearing is definitely warranted to unveil and unravel

Franklin v. Anderson, 267 F. Supp2d 768, (2003) clearly supports petitioners argument and issue before the court in regards to Brady Material.

## Brady Definition

Is to show that the State suppressed favorable evidence, and that the evidence suppressed was material; and the State was negligent in not turning this evidence over prior to trial. And the evidence in question would have shed light, and supported the defense theory from onset. (See, Giglio v. U.S., 92 S.Ct. 763, (1972); Strickler v. Greene, 119 S.Ct. 1936, (1999); U.S. v. Bagley, 105 S.Ct. 3375, (1985); Kyles V. Whitley, 115 S.Ct. 1555; Taylor v. Hayes, 94 S.Ct. 2697, (Fundamental Fairness 5th & 14th Amendment); DiCarlo v. U.S., 6 F2d 364.

Your Honor, I've tried to be precise as possible. But Petitioner really needs the assistance of an attorney in bringing forth what has really happened and transpired. Because right now, the time constraint on Petitioner puts him at a disadvantage in so far as refuting and opposing the report & recommendation of the Magistrate Judge.

Claim (7) Petitioners Ineffective Assistance
of Trial-Counsel Claim

Response and Objection to Magistrates Opinion

Petitioner has steadfastly claimed each and every step
of the **Legal Proceedings that:**  Trial Counsel by his own admitt-
ance, failed in his duties and obligations to **obtain petitioners
case file from previous counsel.** (See Exhibit "D" marked A 105)

**Counsel was also ineffective for not consulting with Peti-
tioner about the potential arguments and his input with counsels
summation.  The notes entailed food for thought in his presen-
tation for the jury to ponder on, which for reasons unbeknownst
to petitioner.  (See Exhibit "D" marked A 105) attached to Peti-
tioners Application.**

**Gaines v. Hopper
575 F2d 1147 (1978)**

The above mentioned case reverts to how important attorney/
client relationship is.  Because it states: Informed evaluation
of potential and meaningful discussion with one(s) client of
the realities of his case are **"cornerstones of effective assist-
ance of counsel".**

First and foremost, trial counsel inherited petitioners
case from the courts; and relieved previous trial counsel **Richard
Charney, LAS.**  In the interim of this transfer, trial counsel
failed to obtain the **"case file"** from previous counsel. (See
Exhibit "D" for verification).  And through notice of this claim

through correspondence dated: February 7th, 2003 (which was after trial). And the fact that trial counsel never made an attempt to obtain such put Petitioner at a disadvantage, and in a precarious position. Because trial counsel conducted pre-trial hearing(s) and was at a disadvantage when he wasn't able to refute or defend petitioner adequately based on things that were addressed in Petitioners Discovery/Omnibus Motion.

                              -Scenario-

    The mere fact that counsel "never obtained or requested the case file"...Is like having a frame & essay about a famous artist & painter. But never being afforded the chance to view his work & artistic skills. And this shoddy free style perfor-mance & function denied and deprived petitioner of less then adequate constitutionally effective assistance of counsel; derived from the missing picture, (case file).

    To add insult to injury. Trial Counsel proceeded to trial without ever completing the pending and ongoing investigation. (See Investigators notes for verification)

    Viewing this and numerous other errors that Petitioner intends to point out in his objection to the **Magistrates Report and Recommendation** that counsel showed a serious **Dereliction of his duties and obligations safeguarded by Due Process.**

    Counsels errors and dereliction of duties deprived and denied Petitioner a fair trial and Due Process.

Had trial counsel obtained the entire record (**case file**) from previous counsel, Richard Charney LAS, he would have been prepared for what transpired at the Wade/Huntley Hearing when both the **Prosecutor and Judge Dorothy Cropper** stated in her conclusion and response in Exhibit "F" of Petitioners Application pertaining to the **Decision & Order; Page (4), paragraph (2) when she stated in her erroneous "Finding of Fact" that: The defendants lawyer** was present during the lineup and voiced no objection to the procedures or to the composition of the lineup. **Whereas, had trial counsel obtained a copy of defendants Omnibus Motion, he would have been able to "refute"sponse by "showing" that although the "objection" wasn't done during the lineup procedure; it was done during the normal motion that is submitted during pre-trial stages.** (Which trial ░░░░░░░░░░░░░░░░░ counsel had no clue of; because he proceeded to the Wade/Huntley Hearing without ever obtaining Petitioners "case file" from previous attorney of record.)

**Strikingly,** we know, from the trial testimony, that appellant was the subject of an overly suggestive lineup. And although counsels failure to fully develop the trial facts and move to reopen the **Wade/Huntley Hearing,** by making a much needed motion before the courts, based on the testimony that was rendered by one of the **victim/witnesses** that **refutes what Judge Dorothy Cropper** based her decision on. Its only fair that the courts see and acknowledge trial counsels dereliction of duties as Ineffective Assistance of trial counsel. Petitioner preserved his claim for Appellate review; as well as Habeas review when he made this same argument along with others during sentencing.

Case Law supporting petitioners claim and argument:

People v. Perez

609 NYS2d 269 (1994)

Counts erred can not be cured or amended, C.P.L. 200.70

People v. Geyer

196 NY 364, 367

(Guiding principle of these cases & issues of Section 293
of code of Criminal Procedure)

   Petitioners asserts: Evidence used and relied upon during
trial was "insufficient" to meet each and every element of
Robbery 1, beyond a reasonable doubt.

   Due to lack of investigation and preparation on the part
of trial counsel, the fact that he proceeded to pre-trial hearing
as well as trial without ever obtaining or requesting Peti-
tioners Case File from previous attorney of record, only goes
to support my argument and the fact that trial counsel was indeed
ineffective, and less then adequate, and failed to meet the
objective standards of reasonableness.  Trial Counsel was negli-
gent, derelict in his duties, deficient, and deprived and denied
Petitioner Due Process and a fair trial.

(5)

(Please see sentencing minutes from page 6 thru 11 where defendant/Petitioner preserved the record for future and further litigation on these issues. "Identification has been the core issue of Petitioners trial".

Petitioner has reinforced his position by exhausting all of his lower court remedies. The record clearly reflects this. The failure of trial counsel to make the necessary motion to reopen the Wade.Huntley Hearing, once testimony was rendered that contradicted the testimony relied upon by Judge Dorothy Cropper, can only be attributed to Trials Counsels Ineffectiveness. Of which Appellate Counsel makes mention of in Petitioners Appellate Brief at Page 19 thru 23.

What the **Magistrate** fails to notice or observe about the photos of the lineup, is that they do not depict **"torsos covered"**. Thus, in assessing this argument, the District Court must examine the trial court record to determine that: The ignored issue(s) and fact at hand is clearly contrary to the decision rendered. The torsos in question were never covered to take away from the overly suggestiveness. Although the courts have rendered a decision that they **"were indeed covered"**. And the question at hand is: Was the trial and appellate courts ruling and decision based on **"erroneous fact finding"**? (Please see Exhibit J for further analysis & confirmation of whether the torsos were indeed covered.)

Had Trial Counsel obtained defendant/Petitioners case file with copies of the lineup photos, he may have been able to refute this argument. And as a result of this dereliction, defendant/

(6)

petitioner was denied the Constituionally guranteed right to
Due Process and Effective Assistance of Trial Counsel.


For reasons unbeknownst to Petitioner, on the advice of
Trial Counsel, Defendant/Petitioner was asked prior to the Wade/
Huntley Hearing not to intervene, react, or show any signs of
digust or emotions. Because without anyone other then my own
testimony of what really happened. The testimony of the police
would be given much weight; as opposed to anything I would be
able to contribute to the hearing.

The question before the courts now is whether Petitioner
was wrong for adhering to counsels advice. Looking back, Peti-
tioner would have to say yes. But,-the fact still remains that
counsel was ineffective in not making the appropriate motion
to the court to preserve the record and argument. Based on
Facts and testimony rendered by victim/witness Virani.

The lineup photos alone clearly depict and show that the
Fact Finding attributed to coming to this conclusion was by
far "clearly erroneous", and can not be supported by the record.

Petitioner is clearly a "defendant" during trial stages.
It would be yet a clear dereliction of trial counsels duties
for "defendant" to have to be held liable and responsible for
objections & request for motions" that trial counsel failed
to make on behalf of defendant. This is negligence on the
part of trial counsel. Defendant/Petitioner urged counsel to
make the necessary motion to re-open the Wade/Huntley Hearing

based on the testimony by Virani that contradicts the decision
and testimony relied upon.  He told defendant that he would
get to it.

It would be a travesty of justice if the District Court
were to adopt the Appellate Divisions Decision.  Because the
record clearly shows through testimony & lineup photos that
the decision rendered is based on clearly erroneous **fact finding**.
And the District Court through further review of the record
should not defer to the Suppression Courts decision.  Because
the facts that have been revealed through trial testimony was
not available to Judge Dorothy Cropper when her decision was
rendered.  And her decision lacks support in the trial record
that now comes to light through a series of motions and appeals.
28 U.S.C. §2254(d)(8); Solomon v. Smith, 645 F2d 1179, 1185
n.2; Campaneira v. Reid, 891 F2d 1014, 1019; McNary v Sowders,
660 F2d 703; Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940.

The independent and adequate ground relied on to dispose
of the clims is still sufficient to constitute a procedural
bar to Habeas review, of course a state procedural bar in terms
of its adequacy is itself a Federal question. See, Lee v. Kemma,
534 U.S. 362, 122 S. Ct. 877; Cotto v. Herbert, 331 F3d 217.

**Trial Counsel was also Ineffective when:** he failed to object
and preserve the Pre-Voir Dire Instruction whereas the court
**prematurely committed the error** by instructing prospective jurors
on the "elements of robbery <u>prior to</u> thw actual selection of

the jury.  But once again a State procedural bar in terms of its adequacy is itself a Federal question. See, Lee v. Kemma, 534 U.S. 362, 122 S.CT. 877; Cotto v. Herbert, 331 F3d 217.

Any failure of Trial Counsel to fully articulate the requested charge was ineffective assistance of trial counsel. (See, Strickland v. Washington, 446 U.S. 668 (1984); People v. Baldi, 54 N.Y. 2d 137 (1981).

Petitioner was stripped of his defense when the courts refused to charge jury on Duress & Justification due to the inability of trial counsel to fully articulate the requested charge; based on petitioners testimony and defense.

Once again: Fair trial in a fair tribunal is a basic requirement of Due Process. - See In Re Munchinson 349 U.S. 133, 136, (1955).

Having deprived Defendant/Petitioner of a fair trial, the error can not be considered Harmless.  People v. Townsend, 67 N.Y.2d at 817.

Through advice of both counsel and co-counsel, defendant/petitioner sat throughout the trial taking notes, so that I might assist trial counsel with my input during summations. But, as you can see from Exhibit "H" summation notes that I gave to trial counsel, which were never used, were returned.

Magistrate in his Report & Recommendation continues to point out that Petitioner is procedurally barred; or the issues are unpreserved because trial counsel did not object to them

them during appropriate stages; in the appropriate arena.
It clearly states that because of trial counsels errors; and
inability to object and articulate himself, Petitioner has failed
to make a proper showing.  When the record before the courts
clearly shows and supports that trial counsel was ineffective
for a multitude of reasons.

The **Due Process Clauses** of the **State and Federal** Consti-
tution forbid the use of unduly suggestive procedures during
pre-trial identification, (U.S. v. Wade, 388 U.S. 218), the
eponym of the hearing is to determine the validity of pre-trial
identification. See, Stovall v. Denno, 388 U.S. 293; Gilbert
v. California, 388 U.S. 263; People v. Adams, 53 NY2d 241; also
see People v. Collins, 60 NY2d 214.

In Crisp v. Duckworth, 743 F.2d 580, courts have found
troubling issues of law when an attorney has fell below standards
of effective assistance of counsel, due to counsels **failure
to adequately investigate and properly prepare for trial.** A
prime example is shown in Kyles v. Whitely, 115 S.Ct. 1555.
Here in Kyles, the court emphasized that materiality is not
a "sufficiency of evidence or insufficiency" test, 115 S.Ct.
at 1566, note (8) eight.  Materiality is only established in
showing that without the wrong, the whole case could reasonably
be in such aa different light as to undermine confidence in
the verdict, and these exact principles are being applied within
the case at hand with Petitioners claim of ineffective assistance
of trial counsel.

It has also been ruled that the period of pretrial invest-
igation and consultation is a critical stage of trial. See,
Mitchell v. Mason, 325 F3d 732.

As in Defendant/Petitioners argument. Prior to trial,
counsel was informed through Investigator that numerous attempts
were being made to contact and investigate pertinent matters.
And his Investigation notes ended by saying: **Investigation to
Continue.** But yet trial counsel opted to proceed to trial with-
out a thorough investigation, with a case of this magnitude.

**Trial Counsel** was also ineffective, reckless, and deficient.
The Federal standard for claims of ineffective assistance of
counsel requires demonstration that counsel's performance failed
to meet the objective standard of reasonableness, and that,
but for counsel's deficiency, and inability to articulate himself
a reasonable probability exists that the result of the proceeding
would have been different, People v. Calderon, 884 NYS 2d 29.

Although Appellate Counsel is only afforded (15) minutes for **Oral Argument.** He is forced to choose the most meritorious issues that he feels he can cover in the alotted amount of time. **However,** in order for Petitioner to exhaust and preserve the rest of the issues that weren't as meritorious as the others. Petitioner is forced to file a 440.10 in the hopes of prevailing with any and all issues of concern that were part of his pre-trial **"over-sights"** and errors.

Petitioner raised (166) questions & errors, that both trial and appellate counsel didn't see fit to address or raise during the appeal process; and trial.

**Petitioner** has made every attempt to preserve the record and pertinent issues through this process. Petitioners Appellate Counsel seen reason to come and consult with petitioner at Green Haven Correctional Facility. Because he wanted to let me know off the record. That there were a hundred things that went wrong during my trial. However, after reviewing such, he elected to go with (6) issues that he felt comfortable with. But, in a situation like this. What becomes of the issues that trial and appellate counsel didn't see fit to raise? Is this a showing of ineffectiveness?

As an indigent, Pro se, laymen and litigant. I am left with the obligation of salvaging the issues at hand. However, it appears that a 440.10 wasn't the proper arena, because they alledge that petitioner is procedurally barred from raising issues that should have been raised during trial; and on Direct

Appeal.  I've been told that if you don't use the issue; you
lose it.  So wouldn't that support an argument of **Ineffective
Assistance of both trial and appellate counsel?**

Petitioner has made every attempt thus far to show that
trial counsel was deficient in his duties and obligations to
defendant.  And as a result of this, I have been denied the
Due Process guranteed to me by the Constitution.  The court
continues to say:  You are procedurally barred from raising
this and that issue.  How can it be so easy for the court to
say "you".  When I was represented by Trial Counsel who is
obvious Ineffective and liable for all of the things that weren't
done in order to preserve the record.  If trial counsel doesn't
object when he should.  How can I be denied and held responsible
for his shortcomings and inability to do so.  As in Cuyler v.
Sullivan, 446 U.S. 335, (U.S.P.A. 1980), point #11, it clearly
states:  The Sixth Amendment does more then require the states
to appoint counsel for indigent defendant(s).  The right to
counsel prevents the states from conducting trials at which
persons who face incarceration must defend themselves without
adequate legal assistance.  U.S.C.A. Const. Amendment 6.
Accordingly, any deficiencies in counsel's performance must
be prejudicial to the defense in order to construe ineffective
assistance under the Constitution.

Trial counsel, as well as Appellate Counsel were ineffec-
tive in regards to over-looking pertinent and critical matters
that played a major role in defendants case.  As the courts
already kno, it has been ruled that: The period of pre-trial
investigation and consultation is a **critical stage of trial.**
See, **Mitchell v. Mason, 325 F3d 732.** Alot of emphasis during
the trial was based on a **"missing witness" that never filed**
**a complaint, never appeared before the Grand , and was not pre-**
sent during trial for defendant/Petitioner to confront his
accuser.  This is yet another denial of Due Process as well.

The Prosecutor throughout the trial bolstered the injury
alledged to have been sustain by Pnina Yael Ashkelon.  The
prosecutor preyed on the sympathy of the jury in regards to
the accident, and injuries sustained.  At no time did trial
counsel object to the harshness & bolstering of such without
a witness to confront.

Throughout the trial, the Prosecutor referred to the "stolen
car" that defendant/petitioner was driving.  Bolstering of an
"uncharged crime" went without objection.  Defendant at senten-
cing preserved the issue and argument at hand when he said that
he couldn't believe how not one objection was made by trial
counsel in regards to remarks made by the prosecutor; and the
evidence that was admitted and entertained throughout the trial

Evidence introduced and relied upon throughout the trial
was **"scientifically proven"** as having nothing to do with defen-
dant.

This same **evidence**, found at various **crime scenes**, was marched before the jury, without any objections.  Counsel showed no effort of pointing out that: Although the **prosecutor** has marched a multitude of evidence before you, showing that a robbery did occur.  What she (the prosecutor) failed to point out was that:  Each and every piece of this evidence was sent to the lab, to be tested for fingerprints; DNA and Fibers, & was "**scientifically proven**" that it was inconclusive as having any ties to defendant.  But for reasons unbeknownst to petitioner he never made any objections; or gave the jury any clarity to ponder on in so far as the evidence and defendant.

Having deprived Defendant/Petitioner of a fair trial, and the Due Process entitled to him, and secured by the Constitution. Trial counsel fell below standards of effective assistance of counsel.  Investigation, preparation, and consultation was something trial counsel fell short of giveing petitioner.

### Appellate Counsel's Ineffectiveness

**Insufficiency of Evidence:** was an issue in the case of People v. Farrell.  But Appellate Counsel felt that this was not leave worthy.

Defendant pointed out to Appellate Counsel that his indictment has an error in the **subdivision charged**.  And with this error, the theory of the wrongly charged subdivision is "**not proven**".  Defendant/Petitioner felt abandoned.  Because I pointed to certain case law that says that it is defective.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, as well as for the reasons previously asserted in this proceedings, it is respectfully submitted that **Magistrate Pitman** erred in concluding that the present habeas claim should be denied. This court should therefore reject the "RR" that the petitioner's claim be denied and grant petitioner's application for **Habeas Corpus Relief** for the reasons asserted.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: January _____, 2012

       Stormville, New York


                               Respectfully submitted,

                               Dennis Farrell, 03A3346
                               Petitioner, Pro-se
                               Green Haven Corr. Fac.
                               P.O. Box 4000
                               Stormville, New York 12582


xc: Hon. Loretta A. Preska, U.S.D.J.
    Attorney General's Office, N.Y. County

Supportive Documents Enclosed
_____

Re:   Documents supporting allegations herein:


1.)   Sworn affidavit by: Maureen T. O'Connor
                          Assistant District Attorney
                          Dated: March 20th, 2007


2.)   IAB Report sought by Petitioner: Received 1/23/09 (F.O.I.L.)
      Condensed & Limited Version of Exhibit "A" of Petitioners
      Brady Discovery.


3.)   Letter from ADA Maureen T. O'Connor in regards to F.O.I.L.
      Request sought and denied.


4.)   Letter from trial attorney informing Petitioner that he
      "never received case file" from previous attorney of record.
      After we went to trial.



      Petitioner prays that these documents will assist you in

your finding and objections to Magistrate Pitman's Report &

Recommendation.


                                        Respectfully,

                                        Dennis Farrell
                                        Pro-se


xc:   Attorney General's Office, New York County

# DISTRICT ATTORNEY
OF THE
## COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**ROBERT M. MORGENTHAU**
DISTRICT ATTORNEY

March 20, 2007

Dennis Farrell
03-A-3346
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-0010

Re: F.O.I.L. Request
Ind. No. 7379/2001

Dear Mr. Farrell:

I am in receipt of Justice Madden's March 12, 2007 decision, received by my office on March 16, 2007. Justice Madden ordered that I submit a certification in response to your F.O.I.L. request.

In compliance with Justice Madden's order:

I hereby certify that on April 18, 2006, I completed a letter in response to Dennis Farrell's F.O.I.L. request. The letter was completed shortly after I examined the New York County District Attorney file in the case of <u>People v. Dennis Farrell, Ind. 7379/01</u>. I certify that upon examining the contents of the file, there were no DD5 reports by Detective Mulligan in the file.

I additionally certify that I have examined the District Attorney file and there were no Investigation Memorandum by Midtown North, Internal Affairs Bureau, or other New York City Police Department units in the file.

Sincerely,

Maureen T. O'Connor
Assistant District Attorney

MTO:rn

cc: Justice Joan Madden

**FEE RECEIPT**
PD 122-017 (Rev. 2-00)-Pent

| RECEIPT NUMBER | B864907 |
|---|---|

Invoice / Lic. / Permit / Summons Nos., Etc.  8912314   CK 58142

Date 1-23-09   Time

Received From: Dekenis Farrell   Address NY 12582

The Sum of: Three Dollars   Dollars $ 3.00

☐ Cash  ☐ Check  ☑ M.O.

For DOCS

**TOWING AND STORAGE CHARGES**

From _____ 20 ____

To _____ 20 ____

No. of Days _____

At $ _____ per day   $ _____

Towing Charge   $ _____

Total   $ _____

Signature: _Hippolyte_

Last Name (Printed): HIPPOLYTE

Rank/Title: Assis In

Shield No.: 

Command: Legal FOIL

**Snapshot - officer information at time of incident:**

Badge/ID no:
Bureau:  UNK-UNKNOWN
Boro/Division:  UNK-UNKNOWN
Precinct/Command:  UNK-UNKNOWN
Rank/title:
Age:    Years of employment:    Years with unit:
In uniform:    Off duty:    Off duty employed:

**Officer witnesses:**

**CPT GEORGE MOLE [896562/00000]**

**Officer current info:**

Bureau:  840-OFFICE CHIEF OF TRANSPORTATION
Boro/Division:  135-TRAFFIC CONTROL DIVISION
Precinct/Command:  135-TRAFFIC CONTROL DIVISION

**Witnesses/reporters:**

Linked address(s):
Complainant Residence:

Linked address(s):

Linked address(s):

**Summary:**

(KH)(236)12/07/01,0832 hrs **PRISONER INJURIED PRIOR TO CUSTODY ** PBMN Duty Capt Mole Tax #
896562, 032 Pct reported Lt Dheedene Tax.#899139, 019 Pct and his operator PO Olsen Tax #902134, 19
Pct assigned to unmarked dept vehicle when they   observed  a stolen  vehicle (2001 Nissian NY
████████ that matched a  wanted vehicle on a robbery pattern sheet. The vehicle was stolen the
previous day from the Imperial Parking Garage located at ███████████ by a perp who displayed a gun
to the parking garage's attendant.  The officers stated the  perp upon observing the RMP following him
sped off and the officers lost sight of the vehicle.  Upon conducting a canvass of the area   the officers
came upon a vehicle accident involving the stolen vehicle at the c/o Park Ave  and 79 St.  The perp's
vehicle had collided with a Livery Cab  (Lincoln NY#███████ ) being driven by████████████████
female passengers,█████████████████████████The three occupants of the Livery cab
were transported to New York Hospital  in serious condition and Ms Ashkelon is likely to die.     Witnesses
at the scene stated the perp  left the scene and fled on foot. The perp was apprehended a short distance
from the accident  location hiding underneath a parked vehicle. The perp who was identified as Dennis
Farrell sustained injuries as a result of the accident not seroius and was taken to Bellevue Hospital.  Capt
Mole staed no misconduct was noted on part of the mos. Capt Mole stated Chief Fahey was notified, no
IAB assistance is being requested. No Arrest/NYSID available.(KH)
**1205 HRS ** Capt Mole stated the perp sustained a broken rib, skull fracture and a laceration over the
eye needing stiches.  Capt Mole stated their was no pursuit involved and the perp is making no
allegations. Sprint #F2222.(KH)
**UPDATE** 12-07-01 1815 hrs UF49 received via fax from Capt Mole' which reports that an
investigation was conducted along with Sgt Ferstler, Manhattan North Inspections and after interviews of

Civilian and MOS witnesses  and an  investigation of the Accident scene was conducted it  reveals that injuries to perp are consistent with being involved in a Motor Vehicle Accident. ( Perp NYSID #3365948M) Based on the above it is apparent no Misconduct noted  and Rec Closed with No further investigation Needed.(Sgtnv)


**When/where:**

Date/time occurred: Dec 07 2001  04:40

Incident Location:  na Park Ave/79 St   New York NY   Precinct: 019-019 Pct.
   County:  Manhattan North

**Status/assignment information:**

Status: Forwarded  Priority: N/a

Opened:  Assigned:    Due:      Completed: 12/12/2001

Disposition:


Unit assigned: Chief Of Dept. Inv & Rev
Handled at field/unit level: No
Investigator assign: UN-ASSIGNED
Supervisor assign: UN-ASSIGNED
Source of information: A-MOS in Dept. ex.CO/ICO .


**Organizational component(s):**

Bureau: UNK-UNKNOWN
Boro/Division: UNK-UNKNOWN
Precinct/Command: UNK-UNKNOWN
Borough Residence: Manhattan North
Precinct  Residence: 019-019 Pct.
Tour: First Platoon


Entered by:  Det Inv Kevin J Hogan on Dec 07, 2001 at 08:27

# DISTRICT ATTORNEY

OF THE

## COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**ROBERT M. MORGENTHAU**
DISTRICT ATTORNEY

April 18, 2006

Dennis Farrell
03-A-3346
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-0010

Re: F.O.I.L. Request
Ind. No. 7379/2001

Dear Mr. Farrell:

By order, dated December 2, 2005, the Honorable Joan A. Madden, directed respondent, the New York County District Attorney's Office to respond to your F.O.I.L. request.

I have reviewed your request and am prepared to respond. As an initial matter, you have been convicted after trial of six different gunpoint robberies, including one where you fled in a car you had robbed and crashed into innocent civilians. One of these victims was critically injured and suffered severe irreversible massive brain damage. During the course of the gunpoint robberies you handcuffed many of your victims, kicked at least one in the head and threatened to shoot others if they called the police. Justice Goodman sentenced you, as a prior mandatory persistent violent felon to five consecutive 25-life terms, concurrent with other sentences for a total of 125 years to life.

In Supreme Court, Part 51, on October 15, 2002, Assistant District Attorney Ann Donnelly provided you, through your attorney with almost 300 pages of <u>Rosario</u> material in this case.

As to your request 1, DD5 for Detective Mulligan, access must be denied. An examination of the file fails to disclose any DD5 by Detective Mulligan. In addition, as to request 5, Investigation memorandum by Midtown North, Internal Affairs Bureau or other NYPD units, an examination of the file indicates there are no "investigation memorandum" contained in the file.

Dennis Farrell
Re: F.O.I.L. Request
April 18 2006
Page 2

As to request:

   2.  Unusual occurrence reports
   3.  Notes by Det. Mays
   4.  Sprint report

each of these were provided to you, through your attorney on October 15, 2002, in Supreme Court Part 51 prior to pre-trial hearings and trial in this matter.  In addition, you have recently completed your appeal and are represented by an appellate attorney who was in possession of the file.  F.O.I.L. does not require that I provide duplicate of that which has been previously provided.  Matter of Moore v. Santucci, 151 AD2d 677, 678 (2nd Dept. 1989), Matter of Swinton v. Records Access Officer for City of New York Police Department, 198 A.D.2d 165 (1st Dept. 1993); See Matter of Huston v. Turkel, 236 A.D.2d 283 (1st Dept. 1997).  Your letter provides an insufficient evidentiary showing that the records sought are no longer available.

Additionally, these documents contain statements and information provided by victims, who were threatened, bound, and terrorized not to call the police.  Release of sprint reports which contain victims' accounts under these circumstances would be an unwarranted invasion of personal privacy.  Clearly, a crime victim can expect that information imparted in confidence to the police, under threat of violence and in reliance on the expectation that such confidentiality will be respected, should be exempt from F.O.I.L.  Public Officers Law Section 87(2)(b)(f).  Johnson v. New York City Police Department, 257 A.D.2d 343 (1st Dept. 1999).

Moreover, in addition to the victims' calls to the police, the sprint also contains a minute by minute detailed police account of the search.  Release of such records would involve release of non routine police procedures and are therefore exempt under F.O.I.L.  Public Officers Law Section 87(2)(e)(iv).

The F.O.I.L. Appeals Officer is Assistant District Attorney Patricia J. Bailey of the same address.

Sincerely,

/S/

Maureen T. O'Connor
Assistant District Attorney
Records Access Officer

# MEYER & DIAZ

ATTORNEYS AND COUNSELLORS AT LAW

710 WEST 190TH STREET

SUITE D

NEW YORK, NEW YORK 10040

(212) 942-6400

FAX (212) 942-3900

EMAIL: MEYERDIAZLAW@AOL.COM

HOWARD R. MEYER
LUIS OSCAR DIAZ*

*MEMBER N.Y., N.J. AND
D.C. BAR

February 7, 2003

Dennis Farrell #349-01-21285
Rikers Island, GRVC, Loc. 11A6
09-09 Hazen Street
East Elmhurst, New York

Dear Mr. Farrell:

     Enclosed please find all the discovery that you need to complete your file—a lot of it you already have copies that I turned over to you.  Also enclosed is your summation notes.

     I already turned over the trial transcript to the Appellate Division as required by law.  Your appellate attorney will give you copies upon request.  As you know I never received paperwork from your prior Attorney.

Very truly yours,

HOWARD R. MEYER, ESQ

February 22nd, 2012

Dennis Farrell, #03A3346
Green Haven Correctional Facility **RECEIVED**
P.O. Box 4000
Stormville, New York 12582                 FEB 27 2012

Honorable Loretta Preska                        LORETTA A. PRESKA
United States District Judge                  CHIEF U.S. DISTRICT JUDGE
500 Pearl Street, Room 2220                        S.D.N.Y.
New York, New York 10007

Re: Permission to submit what I view as the 11th hour addendum
    to the already submitted: <u>Objections to Magistrates Report
    and Recommendation.</u>

                      ♦7 Civ. 8073 (LAP)(HBP)

Honorable Preska:

     Although you granted me an **extension** until **February 29th**
**2012.** I took no chances prior to receiving that, and went ahead
and submitted my response as is. **However,** I have come across
a few interesting cases and opinions that I would like to add
to the **subject matters and topics** already before you in support
of my argument and showing.

     Whatever your response may be in regards to this request.
I want to take the time to thank you for the extension that
you did grant me. But at the time when I submitted my response,
I didn't want to take anything for granted when I prematurely
dropped it in the mail.

     Enclosed with this letter and request, I am sending both
you and the **Assistant Attorney General, Leilani Rodriguez,** a
copy of the supportive case law in question, that is supportive
of the issues already before the court. So please allow and
accept this last minute addition.

                              Respectfully submitted,

                              *Dennis Farrell*

# A F F I D A V I T   O F   S E R V I C E

I, Dennis Farrell, swears under penalty of perjury, pursuant to 28 U.S.C. 1746.  That on February 22nd, 2012, I sent r Respondent Assistant Attorney General Leilani Rodriguez, 120 Broadway, 22nd Floor, New York, New York 10271 a copy of this request via U.S. Postal Service.

Respectfully submitted,

Dennis Farrell, Pro-se

xc: pf/DF
    District Judge Loretta Preska

<u>Addendum to Brady Claim already before the courts.</u>

<u>More in-depth insight on supporting case law.</u>

As in **U.S. v. Agurs, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed. 2d 104.** it clearly states: [7][8] As the District Court recognized in this case, there are situations in which evidence is obviously of such **substantial value** to the defense that elementary fairness requires it to be disclosed even without a specific request. (FN18) For though the attorney for the sovereign must prosecute the accused with earnestness and vigor, he [427 U.S. 111] must always be faithful to his client's overriding interest that "justice shall be done." He is the "servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." **Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. This description of the prosecutor's duty illuminates the standard of materiality that governs his obligation to disclose** exculpatory evidence.

[9] On the one hand, the fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal. (FN19) If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the

(2)

cause of justice.

Under the standard when error is present in the record, the reviewing judge must set aside the verdict and judgment unless his "conviction is sure that the error did not influence the jury, or had but very slight effect." Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.

[10][11] The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. (FN20) *2402 Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. (FN21) If there is no reasonable doubt about [427 U.S. 113] guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

In the case at hand, Petitioner has tried to point out that the "discovery & withholding" of pertinent evidence. Was a deprivation of a fair trial as guranteed by the Due Process Clause of the Fifth Amendment.

(3)

As the courts have already noted:  Our overriding concern
in cases such as the one before us is in the defendant's right
to a fair trial.  One of the most basic elements of fairness
in a criminal trial is that available evidence tending to show
innocence, as well as that tending to show guilt, be fully aired
before the jury; more particularly, it is that the State in
its zeal to convict a defendant not suppress evidence that might
exonerate him.  See **Moore v. Illinois, 408 U.S. 786, 810, 92
S.Ct. 2562, 2575, 33 L.Ed. 2d 706 (1972) (opinion of Marshall
J.).**

Petitioners defense revolved around a showing of **"mistaken
identity", "suggestive identification/lineups".**  Had defendant/
petitoner been aware of yet another individual being apprehended
for one of the many robberies that he is alledged to have given
"confessions" to.  He would have used to document and information
to impress upon the jury that the confessions before them were
a product of duress,coercion, and physical choking and beating,
and they should not be afforded the weight they were given.
And by showing them that here is yet another man that was
arrested and already in custody for over (30) days by the time
petitioner was arrested.  And he had been already identified
as the man that robbed this store at gunpoint.  But yet (30)
days later, it is alleged that petitioner gave (11) confessions
to all the unsolved robberies in the 19th Precinct.  Petitioner
was beat up and choked to sign **"pre-written"** confessions, under
the threat of being choked and beat up more if he didn't coop-
erate.  And had Petitioner been able to make a showing of a

(4)

man that was already in custody for one of the many armed
robberies.  Who was already positively identified by the owner
of this place as the man that robbed him at gun point.  Whom
the Distirc Attorneys Office elected to take the robbery off,
and put it on defendant/petitioner.  It would have gave this
case a new face and the reasonable doubt needed to see things
from a different perspective, and in another light.  As the
coourts have already stated: If there is a significant chance
that the withheld evidence, developed by skilled counsel, would
have induced a reasonable doubt in the minds of enough jurors
to avoid a conviction, then the judgment of conviction must
be set aside. The impact of one iota of evidence that could
have swayed and broadened the scope of the jury, should be
looked upon as a deprivation of Due Process Clause guranteed
by the Fifth Amendment.

        The withheld document, that depicits yet another man in
custody for the "same crime"that petitioner is alledged to have
given a confession to, only goes to support and confirm what
petitioners defense was built around.  That he didn't committ
the robberies in question; that he didn't give or make the con-
fessions that he was beat up and choked into signing.  And that
this entire arrest and conviction for (4) armed robberies was
a "fishing expedition" in the hopes of cleaning up a back log
of unsolved robberies within the confines of the 19th Precinct
where petitioner has lived and grown up all of his life.

        Looking ahead even more.  The document(s) in question before
the court can also go on to unveil pre-conceived and perjured

(5)

testimony, that the prosecution knew, or should have known about.
And with that in mind and before the court, the judgment of
conviction must be set aside if there is any reasonable like-
lihood that the false testimony could have affected and infected
the judgment of the jury and the truth seeking function of the
trial process.  Because there is no doubt that "if the document
of another person being already under arrest for one of the
many robberies that petitioner is alleged to have given con-
fession(s) to.  It would definitely give "credence" to what
petitioner has all along cried out about.

Two (2) documents have been unveiled "after trial" that
could have made a world of difference.  And supported Peti-
tioners defense, and the overall credibility of the witnesses
that perjured themselves in the haste to obtain "convictions"
for the many unsolved robberies within the confines of the
19th Precinct.

Petitioner continues to plead with the court in so far
as a "evidentiary hearing" is concerned.  Because evidence
relied upon, and introduced to the jury was misleading, with
no clarity whatsoever in regards to its significance.  All
of the evidence introduced and relied upon was scientifically
tested and proven as having no direct ties to Petitioner.  But
yet it went uncontested and marched before the jury.

"The petitioner was denied due process of the law by the
State's suppression of evidence before his trial began.  The
proceeding must commence again from the stage at which the peti-
tioner was overreached.  The denial of due process of law

(6)

vitiated the verdict and sentence.  Rogers v. Richmond, 365

U.S. 534, 545, 81 S.Ct. 735, 5 L.Ed.2d 760.  The verdict is

not saved because other competent evidence would support it.

Culombe v. Conneticut, 367 U.S. 568, 621, 81 S.Ct. 1860, 6 L.Ed.

2d 1037.  Brief for Petitioner in Brady v. Maryland, No. 490,

O.T. 1962, p. 6.

     The court now holds that the suppression by the prosecution

of **evidence favorable** to an accused upon request violates due

**process** where the evidence is material either to guilt or to

punishment.

     One of the hypothetical questions and examples in this

case should have been the **scientifically proven and tested evi-**

**dence**, and the inability of trial counsel once again to object

to the **introduction & solicitation of misleading evidence.**

     In its totality, the "**undisclosed statements/documents**"

denied and deprived defendant the ability to prepare for trial,

rather then the materiality of the evidence to the issue of

guilt or innocence.

     In earlier cases the followinf standards for determining

materiality for disclosure purposes were enunciated:  (1) evi-

dence which may be merely helpful to the defense;  (2) evidence

which raised a reasonable doubt as to defendant's guilt; (3)

evidence which is of such a character as to create a substantial

likelihood of reversal.

     It is the presence of deliberate prosecutorial misconduct

that petitioner hopes will lead the court to recognize a rule

**(7)**

that needs to be addressed and adhered to.  Especially after
defense made specific request for information.  The significance
of the defense request, the Court states, is simply that it
gives the prosecutor notice of what is important to the defense;
once such notice is received, the "failure to disclose" is seldom
if ever excusable.  (see, United States v. Morell, 524 F.2d,
at 553; United States v. Miller, 499 F.2d, at 744; United States
v. Kahn, 472 F.2d, at 287; United States v. Keogh, 391 F.2d,
at 146-147.

    Petitioner respectfully prays that after closer review
of the issues before the courts.  That the court will assign
counsel and mandate a much needed "evidentiary hearing" for
more clarity and insight.